# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Entitlement Holder for MBS Nos.: ████5409 & ████6863
CUSIP No.: ████5796 & ████1208
Commonwealth Trust Master File No.: ████-1976

---

McLellan, Andrew Robert, Executor on behalf of
ESTATE of ANDREW ROBERT MCLELLAN
    (Petitioner)
               &
ROBERT H. HOLBER, Acting Trustee,

        Vs.

NAVY FEDERAL CREDIT UNION, et al.,
    (Claimant)

Case No.: <u>25-13745-AMC</u>

**MOTION FOR:**
**DEMAND FOR CERTIFIED ACCOUNTING**

*FILED 2025 NOV 21 PM 3:06 U.S. BANKRUPTCY COURT*

---

# <u>MOTION FOR: DEMAND FOR CERTIFIED ACCOUNTING</u>

TO THIS HONORABLE U.S. BANKRUPTCY COURT:

Comes now, McLellan, Andrew Robert, herein "Executor and Sole Authorized Representative," a private man of the Commonwealth of Pennsylvania, appearing pro se, respectfully submits this "**Motion for Demand for Certified Accounting**," to be placed on the record immediately by all claimants to the ESTATE of ANDREW ROBERT MCLELLAN.

Interim Acting Trustee Holber by appointment through the Department of Justice is duty-bound, to require certified GAAP/GAAS-compliant accounting for all claimants to the Estate and to ensure all "debts" and "credits" conform to all Internal Revenue Service Standards and Reporting.

In support thereof, Petitioner states as follows:

---

Please see attached "**NON-NEGOTIABLE NOTICE OF DEBT VALIDATION REQUEST**" which has been initiated with the IRS Criminal Investigation Division.

There are multiple assets of considerable value, securities, that have been created by the named entities (but not limited to) by inducing the credit/collateral of the Estate. The inducement of the Estate's credit, solely permitting the securities value, was conducted without authority nor consent of the sole authorized representative.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

These assets, securities, have been **traced** and are being held in custodianship by the respective entities, however in the name of the Estate, for the benefit(s) of unintended parties without consideration to the primary investor/creditor, The Estate.

These assets are the rightful, lawful, and equitable ownership of the Estate on behalf of the Beneficiary.

Further, see "Exhibit J" to the **"Debt Validation Request"** which are the 1099A's filed with the IRS properly showing the "lender" and "borrower" status to the claimed securities herein. Any entity/party/claimant that wishes to refute these lawful IRS tax filings must enter onto the record [its] tax filings to prove such, otherwise unrebutted and standing.

See "Exhibit K" to the **"Debt Validation Request"** which is the FS Form 1025 filed with the US Treasury (standing and accepted) declaring the named securities herein "stolen" and to be the rightful, lawful, and equitable ownership of the Estate on behalf of the Beneficiary. Any entity/party/claimant that wishes to refute these claims with the US Treasury must enter onto the record [its] tax filings to prove such, otherwise unrebutted and standing.

See "Exhibit L" to the **"Debt Validation Request"** which is the UCC-1 filed with the PA Department of State (standing and accepted) properly declaring the true Secured Party, to the Real Property 4159 White Horse Road, Malvern, PA 19355 and having superior lien over any other party. Any entity/party/claimant that wishes to refute this UCC-1, superior lien, with the PA Department of State must enter onto the record [its] tax filings to prove such, otherwise unrebutted and standing.

Further, with Petitioner's averments and evidence substantiating such, and without certified GAAP/GAAS-compliant accounting by claimants to substantiate such claims with adherence to all Internal Revenue Service Standards and Reporting, at this stage, the court must accept all factual averments as true and construe them in the light most favorable to the Petitioner (**Twombly, 550 U.S. at 555**).

Additionally, with the traced securities being held hidden from the light of the law and without not one claimant producing certified GAAP/GAAS-compliant accounting with adherence to all Internal Revenue Service Standards and Reporting should any party not comply, the IRS audit that has been set in motion is inevitable and will require such.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Additionally, as the sole Authorized Representative with a fiduciary duty to protect the Estate, I will have to file IRS Forms 13909, 14157, 14157-A, 14039, 3949-A, and 211, to report the numerous frauds and tax evasions per 26 U.S.C. § 7206, file a Fair Trade Commission ("FTC") complaint, and an SEC complaint for embezzlement, tax evasion, and securities fraud (SEC Rule 10b-5 18 USC §§ 472, 475).

Additionally, attorneys like other taxpayers are subject to prosecution if they commit tax offenses. Attorneys and accountants prosecuted under IRC §§ 7201 (26 U.S.C. § 7201) and IRC §§ 7206(1) (U.S.C. § 7206(1)) have included government attorneys, personal injury attorneys, criminal defense attorneys, tax attorneys, and real estate attorneys. See United States v. Irwin, 593 F2d 138 (1st Cir. 1979) (trial attorney); United States v. Cunningham, 723 F2d 217 (2nd Cir. 1983), 466 US 951, United States v Silverman, 449 F2d 1341 (2nd Cir. 1971), 405 US 918 (1972) (personal injury attorney), United States v. McGill, 964 F2d 222 (3rd Cir.).

If non-compliance remains with evidence absent from the record and an equitable result for **all parties** is unreached, once the audit commences, if a single aforementioned offense is determined at the responsibility, the actions, of any party against the Estate, this will establish great potential of considerable damages to the Estate, namely the Beneficiary, by revealing a false claim(s) levied.

Pursuant to 11 U.S.C. § 541(a)(1) Interim Acting Trustee Holber is to bring forth these credits (but not limited to) and all certified GAAP/GAAS-compliant accounting for any claimed "debts" against the Estate with adherence to all Internal Revenue Service Standards and Reporting for reconciliation and settlement of the Estate for **all parties**.

Petitioner remains in honor and committed to settlement of the Estate for **all parties,** and obedient to Our Lord in Heaven, Who decrees us to "forgive our trespassers as we too ask for forgiveness for our trespasses."

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THEREFORE, Petitioner prays to God Almighty in Heaven Creator of All and humbly and respectfully requests of this Honorable to.:

1.   Order the Trustee receive of all claims/claimants certified GAAP accounting for all alleged "debts" against the Estate with adherence to all Internal Revenue Service Standards and Reporting.

2.   Order the Trustee receive of all claims/claimants (and involved associates) all certified GAAP/GAAS-compliant accounting for the Estate assets, the securities declared herein (but not limited to).

3.   Order the Trustee receive of Attorney for NFCU [its] "loan" records (as required by the IRS, Federal banking laws USC 12, and FNMA's Sellers & Services Guide).

*"The absence of evidence is the evidence."*

Respectfully submitted,

Dated: <u>Nov. 21st, 2025</u>   /s/ _M^cLellan; Andrew-Robert_ ,

**McLellan; Andrew - Robert, Executor/Authorized Representative**
**ESTATE of ANDREW ROBERT MCLELLAN**
Trust Certificate Master File No.: ▓▓▓▓-1976
Private, Non-Domestic Estate Jurisdiction
**All Rights Reserved, Waiving None, Without Prejudice & Without Recourse**

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Entitlement Holder for MBS Nos.: ▇▇▇5409 & ▇▇▇6863
CUSIP No.: ▇▇▇5796 & ▇▇1208
Commonwealth Trust Master File No.: ▇▇-1976

| | |
|---|---|
| McLellan, Andrew Robert, **Executor** on behalf of<br>**ESTATE of ANDREW ROBERT MCLELLAN**<br>(Petitioner)<br>**&**<br>**ROBERT H. HOLBER**, Acting Trustee,<br><br>**Vs.**<br><br>**NAVY FEDERAL CREDIT UNION**, et al.,<br>(Claimant) | **Case No.:** <u>25-13745-AMC</u><br><br><br><br>**MOTION FOR:**<br>**DEMAND FOR CERTIFIED ACCOUNTING** |

# ORDER

**UPON CONSIDERATION OF:**

Petitioner's Motion for: Demand for Certified Accounting, it is so

**ORDERED,** that Petitioner's Motion is hereby **GRANTED;**

and it is further,

Dated: _____

_____
Honorable Chief Judge Ashely M. Chan

## NON-NEGOTIABLE NOTICE OF DEBT VALIDATION REQUEST

THIS NOTICE AND ENCLOSURES ARE A PRIVATE COMMUNICATION BETWEEN THE PARTIES AND
CONSTITUTES DUE PROCESS IN ADMINISTRATIVE PROCEDURE.

NOTICE TO AGENT IS NOTICE TO PRINCIPAL. NOTICE TO PRINCIPAL IS NOTICE TO AGENT.
APPLICABLE TO ALL SUCCESSORS AND ASSIGNS.

Notice Date: November 21st, 2025

FROM: McLellan, Andrew Robert
      4159 White Horse Road
      Malvern, Pennsylvania 19355

TO: IRS CRIMINAL INVESTIGATION DIVISION
    c/o GUY FICCO, CHIEF
    1111 CONSTITUTION AVENUE, N.W.
    WASHINGTON, DC 20224

CERTIFIED MAIL RESTRICTED DELIVERY
9589 0710 5270 2418 2613 22

TO: NAVY FEDERAL CREDIT UNION
    Attn: Mr. Dietrich Kuhlmann, Pres/CEO
    820 Follin Ln SE
    Vienna, VA 22180

CERTIFIED MAIL RESTRICTED DELIVERY
9589 0710 5270 2418 2613 39

TO: Fein, Such, Kahn, & Shepard - No. 099258675
    Attn: Tammy L. Terrell Benoza, No. 20271989
    6 Campus Drive, (Suite 304)
    Parsippany, New Jersey 07054

CERTIFIED MAIL RESTRICTED DELIVERY
9589 0710 5270 2418 2613 46

TO: The Huntington National Bank
    Attn: Stephen D. Steinour, Pres/CEO
    41 S High St.
    Columbus, Ohio, 43287

CERTIFIED MAIL RESTRICTED DELIVERY
9589 0710 5270 2418 2613 53

TO: U.S. Bankruptcy Court Eastern District of PA
    Attn: Clerk of Courts - Case No: 25-13745-AMC
    ROBERT N.C. NIX, SR. FEDERAL BUILDING
    900 Market St. (Suite 400)
    PHILADELPHIA, PA 19107
================================================

CERTIFIED MAIL RESTRICTED DELIVERY
9589 0710 5270 2418 2613 77
================================================

TO: Holber & Guilfoil
    Attn: Robert H. Holber PC, Trustee - Case No: 25-13745-AMC
    41 East Front Street
    Media, PA 19063
================================================

CERTIFIED MAIL RESTRICTED DELIVERY
9589 0710 5270 2418 2613 84
================================================

## Reference:
## U.S. Bankruptcy Court Eastern District of PA
## (C.R.I.S. Acct.) Case No: 25-13745-AMC
## Chief Judge, Ashely M. Chan

Navy Federal Credit Union
1. Loan/Account: **8029225409 (Exhibit A)**
   **CUSIP: 872365796**

2. Loan/Account: **8032656863 (Exhibit B)**
   **CUSIP: 922031208**

3. ISIN: **US0250818459 (Exhibit C)**
   **CUSIP: 025081845**

U.S. Bankruptcy Court Eastern District of PA
1. CRIS Acct.: **2410131AMC (Exhibit D)**
   ISIN: **US0263008221**
   CUSIP: **026300822**

2. CRIS Acct.: **2412201AMC (Exhibit E)**
   **CUSIP: 353519101**

3. ISIN: **US0263001036 (Exhibit F)**
   CUSIP: **026300103**

4. ISIN: **US0263004006 (Exhibit G)**
   CUSIP: **026300400**

The Huntington National Bank
1. Loan/Account: **20-200062643430 (Exhibit H)**
   ISIN: **US3535382002**
   CUSIP: **353538200**

# **Additional Exhibits**

Exhibit I: IRS Form 2848 (Filed)

Exhibit J: IRS Forms 1099A's (Filed)

Exhibit K: US Treasury FS Form 1025 (Filed)

Exhibit L: UCC-1 (Filed)

## I. NOTICE OF VALIDATION REQUEST

This notice serves as formal notification, in accordance with 15 U.S. Code § 1692, that the debt referenced above is contested and disputed, either partially or entirely.

Under the Fair Debt Collection Practices Act (FDCPA), all collection efforts regarding this account are to be suspended until the matter is settled.

I declare that the accounts in question holds inaccurate or fraudulent information. I did not authorize, nor did anyone under my authority, the disputed transactions.

Any further attempts at solicitation of this kind will be reported to the U.S. Postmaster for potential mail fraud, as it involves the use of U.S. Mail to promote a contract that may be fraudulent or misleading.

I am giving you actual and constructive legal notice that I am revoking and rescinding my signature and any and all contracts, power of attorney, and power of trusteeship with you and/or any indenture trustees for cause; mistake and no full disclosure of the certified GAAP/GAAS accounting records.

I am declaring aggravated identity theft, 18 USC § 1028A, by the use of my social security number to file IRS tax records on my behalf without my knowledge or consent. I never authorized you or any other person to prepare any IRS returns for me, nor did I ever receive any IRS forms from you, such as the 1099 A, to acquire my secured property by the extension of my credit. I reserve all rights to file IRS Forms 1099 A, C, B, and OID, 13909, 14157, 14157-A, 211, and SSA-89 and file a complaint against the persons responsible for the filings to the IRS Criminal Investigation Division and the Social Security Administration if the certified tax records are not immediately supplied to me for my inspection. I will remind you that I am the Lender, Creditor, Recipient and you are the Borrower, Debtor, Payer. Because it appears that you created security instruments on my behalf as the Secured Party, Grantor, Bailor, Owner, and Beneficiary, you are required to maintain all the accounting records in accordance with GAAP, GAAS, and the Sarbanes-Oxley Act or it is a violation of the Securities and Exchange Act of 1934.

Under 15 U.S. Code § 1681i and § 1692e(8), you are required to promptly notify all credit reporting agencies (CRA) or Credit Bureaus (CB) about the dispute.

It is your responsibility to direct them to delete any negative information pertaining to the accounts in question.

Additionally, failure to verify with the credit bureaus as of the current date, or inaction regarding these demands, constitutes a breach of the FCRA and FDCPA, which may incur the associated fines and penalties.

Verification and validation are demanded and required. Verification and validation are distinct terms and concepts, as highlighted by their definitions:

Verification involves confirming the accuracy of a claim, such as the existence of a debt, while validation is the process of ensuring that a product or service meets the requirements and expectations for which it was intended.

Both play crucial roles in different contexts, ensuring reliability and compliance with standards. See Chaudhry v. Gallerizzo, 174 F.3d 394 (4th Cir. 1999).

Validation is for disputing a debt, stopping account and credit reporting activities until the debt has been confirmed, see Spears v. Brennan, 745 N.E. 2d 862 Ind. App. (2001).

## 11. VERIFICATION AND VALIDATION REQUIREMENTS

The demands are, but not be limited to:

1) I am exercising my rights under the Truth in Lending Act, specifically 15 U.S. Code § 1601-1667f, to request a clear disclosure of the identity of the original creditor involved in these transactions.

It is my legal right to have transparent information about the principal party of interest.

2) I need the 1099 A from the court administrative accounting offices. I did not authorize them to file a 1099 A on my behalf. See IRS 1099 A and C Instructions, pg 3 (5c) "Who must file" and pg 4 "When is a debt canceled".

3) I need a copy of the receipt for the original transaction(s) also known as the demand deposit.

4) I need the Bid, Performance, and Payment bond from the court administrative accounting offices. I did not authorize the filing of an IRS 1099 A or a bond to be created in my name. I am declaring identity theft, accounting fraud in violation of 26 USC § 7201, fraud and false statements in violation of 26 USC § 7206, and securities fraud in violation of SEC Rule 10B-5. I am the Grantor and Beneficiary to the case trust, which is a security at bar. I reserve all rights to file IRS Form 14039 Affidavit of Identity Theft to have the court accounting audited by a Special Master from the IRS Criminal Investigation Division and the Federal Trade Commission. The case trust securities at bar are hereby revoked as my property as the Grantor in accordance with 26 USC § 661~677.

5). I need the court's major and minor CUSIP for the bond and the CRIS account number to properly file an amended 1099 A, B, and C with the IRS.

6) Please provide me with the IRS 1099 S and all other IRS forms that proves that you paid taxes on the securities and own the security/note.

7) I need the name and contact information for the indenture trustee for the bank.

8) I need any insurance policies and/or claims filed against the accounts.

9) I need the full setoff account number for the accounts.

10) I need a full certified GAAP/GAAS accounting for the accounts. Not just a copy of the statements as that is NOT GAAP/GAAS accounting records.

11) I need an original contract to be produced, bearing the wet-ink signatures of all involved parties.

Prior to the hearing, a notarized copy may be submitted, but the original document is required during the hearing.

No substitutes, such as an affidavit of loss, will be considered valid.

Should the original contract be stored at a different location, please provide the address and the available times for in-person viewing. As a maxim of contract law:

"The basic elements required for the agreement to be a legally enforceable contract are: mutual assent (agreement by both parties to a contract), expressed by a valid offer and acceptance; adequate consideration; capacity; and legality."

12) Please provide a detailed explanation of the nature of the claimed debt, including the specific services or money transactions that resulted in the alleged amount owed.

Additionally, furnish a comprehensive breakdown of how the total sum was determined, accompanied by any pertinent documentation that substantiates the claimed obligation under 15 U.S. Code § 1692g(a) and § 1692g(b).

It is also asserted that there is a considerable unresolved BILLING DISCREPANCY or ERROR concerning the original debt.

13) Production of account and general ledger statement(s) showing the full accounting of alleged obligation.

This includes evidence of contracts, billing statements, PLUS any securities generated behind the scenes, tax benefits taken, charge offs (which are income), and discounts in selling the alleged debt.

This is required by all parties: debt collectors and principals.

This evidence is due and is required to be admissible as evidence (sufficiency of pleadings by a fact-witness), along with a signed affidavit by the person responsible for maintaining these public and private accounting records, by the person having first-hand knowledge as to its accuracy and authenticity, who are able to testify under oath as required.

Mere account statements of account are insufficient evidence.

14) Deliver proof your organization is a contract party to the original transaction. You seem to think there is a right to collect when your organization never loaned money to me.

I have never signed any contract with you.

You may have bought a note/debt, but it was not signed by all parties.

American Jurisprudence 2d 73 states that "The right of subrogation does not exist for a stranger to the transaction." Subrogation means "to substitute" and "stranger to the transaction" means a party that is not on the original contract. So, the right to substitute a third-party collector into a contract, does not exist. The third-party has no rights if they did not give consideration in the original contract and were not mentioned on the contract or were any part of the contract; including loans transferred, assigned, sold, or changed hands in one manner or another. To bring such a claim will immediately be identified as fraud upon the court. You have been noticed.

15) If you purchased the alleged debt, how much did you pay for the account. I need a copy of the purchase agreement.

16) Proof that the alleged account is not out of the state's statute of limitations, if proven valid at all.

17) Stipulate for the record whether or not the alleged loans/accounts has been securitized, and if so, the name and all other information of the financial instrument the alleged loan is bundled with, including profits generated or tax benefits taken.

18) Where did the money or credit supposedly loaned or issued to me come from? Or if from a service, a loan or properly executed service contract is still missing.

19) A copy of all IRS documents filed to acquire my credit – i.e. IRS Form 1099 A (and any other form B, C, or OID).

20) A copy of the Money Net Daily Transfer Log 120 showing the source and destination of the extension of my credit.

### III. OPPORTUNITY TO CURE

A response to each point outlined in the affidavit is mandated by law. The legal principles, "Silence is admission," and "An affidavit without rebuttal stands as truth," apply here.
According to Restatement 2nd § 69, not responding within thirty days is deemed an acknowledgment of the debt's invalidity, a relinquishment of all associated legal claims, and an indication that the account holder may have been subjected to identity theft.
Consequently, there is a call to close the claim and amend any adverse credit reports related to the purported debt with all credit reporting agencies and bureaus, pending verification.
Upon receiving this notice, you are allotted a thirty-day period to either:

1) submit a detailed response to the provided affidavit, through a sworn affidavit of your own, accepting full commercial responsibility and attesting under oath to the veracity and completeness of your statements.

Simple declarations will not be deemed adequate.

Should you require additional time to furnish a comprehensive reply, please formally request an extension in writing. Alternatively,

2) provide a written confirmation within the same thirty-day timeframe, acknowledging the full settlement of the purported debt, and specifying the timeline for the removal of the item from all credit, banking, internal, and public records where it appears.

Upon receipt of such confirmation, no further measures will be necessary, and your obligations concerning this issue will be considered fulfilled.

A failure to address this matter will be regarded as a default in commercial terms and will imply your agreement with the affidavit's assertions.

## IV. FUTURE COMMUNICATION(S)

According to the Fair Debt Collection Practices Act, Section 805(c), the Telephone Consumer Protection Act, and the Federal Debt Collection Practices Act, Section 1692c, excluding the waiver of Section 1692c(c), any further communication about this purported debt following the receipt of this notice, without delivering appropriate procedural validation, constitutes a violation.
A "refusal for cause" will apply to any unsigned correspondence or any communication that fails to identify the individual sender from your organization.

Written communications are permitted solely for conveying settlement proposals or providing debt validation.

## V. NOTICE AND DEMAND FOR PAYMENT

Should there be no comprehensive validation of the purported debt, it is hereby recorded that I have sustained "harm and injury" equivalent to the value of the unverified debt, accruing at an interest rate of 20% per day payable within 10 days of receiving my non-negotiable notice of default and final statement.
Should there be any attempt to repossess my property having failed to provide comprehensive validation of the purported debt, it is hereby recorded that I have sustained "harm and injury" equivalent to the value of the unverified debt, accruing at an interest rate of 20% per day payable within 10 days of receiving my non-negotiable notice of default and final statement.
This constitutes a formal notification and a demand for the settlement of any unvalidated debt, which includes a minimum fine of $1,000 for each violation of the FDCPA, per incident of "harm and injury".
This is enforceable through small claims court or other legal avenues.
Additionally, a notice of lien will be filed against all personal and principal assets to recover the owed amount.

## VI. CASE LAW AND JUDGEMENTS AGAINST DEBT COLLECTORS

https://www.irs.gov/irm/part25/irm_25-001-001

IRM 25.1.1.3 Definition of Fraud

1.    **Fraud** is deception by misrepresentation of material facts, or silence when good faith requires expression, which results in material damage to one who relies on it and has the right to rely on it. Simply stated, it is obtaining something of value from someone else through deceit.

2.      Tax fraud is often defined as an intentional wrongdoing, on the part of a taxpayer, with the specific purpose of evading a tax known or believed to be owing. Tax fraud requires both:

- a tax due and owing; and

- fraudulent intent.

"The Act is a strict liability statute; violations of the Act do not need to be intentional to be actionable." Smith v. National Credit Systems, Inc., 807 F. Supp. 2d 836, 840 (D. Az. 2011) Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573 (2010) held that a debt collector who makes an incorrect statement of law in communications FDCPA's "bona fide error" defense, per 15 U.S.C. § 1692k(c), even if it was an unintentional error.

"Because the FDCPA is a "strict liability statute," Plaintiff need only demonstrate "one violation of its provisions" to be entitled to a favorable judgment." Doshay v. Global Credit and Collection Corporation, 796 F.Supp.2d 1301, 1304 (D. Colo. 2011)
"Simply stated, if an attorney regularly engages in debt collection activities, that attorney is a 'debt collector' under the FDCA and is subject to its provisions'.... This court holds that there is no additional implied exemption for 'attorneys when performing tasks of a legal nature'." Heintz v. Jenkins, 514 U.S. 291 (1995)

"The FDCPA is a remedial statute, it should be construed liberally in favor of the consumer." Johnson v. Riddle, 305 F.3d 1107, 1117 (10th Cir. 2002)
Regarding hearsay exceptions for business records: "In short, it is manifest that, in this case, those reports are not for the systematic conduct of the enterprise as a railroad business. Unlike payrolls, accounts receivable, accounts payable, bills of lading, and the like, these reports are calculated for use essentially in the court, not in the business. Their primary utility is in litigating, not in railroading." Palmer v Hoffman 318 US 109 (1943) Affidavit Decision

Many more cases have proven this:

De facto or de jure rulings secured by incestuous relationships in a lower District Court are "to be decided by the trier of fact on the evidence" in an Appellate Court judged by facts alone. Lewis v. ACB Business Services, Inc. 135 F.3d 389 6th Cir. (1998). "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." Norton v. Shelby County, 118 U.S. 425, 6 S. Ct. 1121, 30 L. Ed. 178 (1886)
In Nelson v. Santander Consumer USA, Inc., 931 F. Supp. 2d 919, 932 (W.D. Wis. 2013) Mrs. Heather Nelson was awarded $571,000 in damages for the harassment involved.

Additionally, there have been numerous judgments against debt collectors for similar violations such as:  Dixon-Rollins v. Experian Information Services et. al. 2:09-CV-00646-TJS, revolving around "inaccurate" claims on a credit report.

In that case, for similar claims, the jury awarded Dixon-Rollins $500,000; this amount was reduced to $270,000 by the court.

Even a mere massage places you at risk: Gryzbowski v. I.C. System, Inc., 691 F. Supp. 2d 618 (2010) found a message was a communication in an attempt to collect a debt; and Mark v. J.C.

Christensen & Associates, Inc., Civil No. 09-100 ADM/SRN, 2009 WL 2407700 (D.Minn. Aug. 4, 2009) found a voicemail to be the same.

Even worse, in Costa v. National Action Financial Services, 634 F. Supp. 2d 1069 (E.D. Cal. 2007), NAFS failed to state a message was from a debt collector and lost. Romea v. Heiberger & Associates, 988 F. Supp. 715 (S.D.N.Y. 1998); and Inman v. NCO Fin. Sys., Inc., No. CIV.A. 08-5866, 2009 WL 3415281, at *1 (E.D. Pa. Oct. 21, 2009) found pre-recorded calls count as communication. In the case of Brim v. Midland Credit Management, Inc., 795 F. Supp.2d 1255 (2011) the jury rendered a verdict awarding plaintiff $100,000 in compensatory damages and $632,180.00 in punitive damages due to Midland Credit's "willful noncompliance" of its duties under federal law (FCRA) to adequately investigate the consumer's repeated credit report disputes over a 2-year period. Midland Credit sought to vacate the judgment or reduce the plaintiff's award, but the court refused, finding that a punitive damages award of roughly six times the actual damages award of $100,000 was appropriate under Supreme Court standards.

Other cases showing the ease of incurring FDCPA violations, like Cavallaro v. Law Office of Shapiro & Kreisman, 933 F. Supp. 1148 E.D.N.Y. (1996); and Masciarelli v. Richard J. Boudreau & Associates, LLC, 529 F. Supp. 2d 183 (2007); and Harrington v. CACV OF COLORADO, LLC, 508 F. Supp. 2d 128 (2007); and Picht v. Hawks, 77 F. Supp. 2d 1041 (1999); and West v. Nationwide Credit, Inc., 998 F. Supp. 642 (1998); and Cloman v. Jackson, 988 F2nd 1314, 1320 (1993); and Edwards v. Niagara Credit Solutions, Inc., 584 F.3d 1350 (2009).

Including case law that shows pro se and pro per litigation is extremely effective in rendering invalid debt obsolete, such as Acosta v. Campbell Case No. 6:04-cv-761-Orl-28DAB (2006); and Sherman v. Blair, Case No: 5:15-cv-36-Oc-34PRL (2015); and Stinson v. Asset Acceptance, LLC, No. 1:05cv1026 JCC (2006); and Chlanda v. Wymard No. 3-93-321 (1994).

## VII. FINAL PLEA AND RECOMMENDATION

Litigation can be prohibitively expensive and is best avoided.

If necessary, I am prepared to represent myself and pursue legal action at no cost.

However, it is likely that your organization will need to engage a lawyer's services.
Opting to sue in small claims court may restrict your defense options, should I choose this path due to numerous legal infractions.

Given the low cost-effectiveness of a lawsuit with limited means, this communication serves as a sincere effort to settle this issue without resorting to court.

I am open to a private and amicable resolution.

I appreciate your consideration of this matter.

Being duly sworn, I depose and say that I am the author of this document, and the facts contained herein are true and correct to the best of my knowledge and belief. I affirm this under penalty of perjury under the laws of the State of Texas.

## NON-NEGOTIABLE NOTICE OF DEBT VALIDATION REQUEST - Execution Page

by: Andrew R. McLellan, Without Recourse, All Rights Reserved

Signature: _____

DATED: _1_1_ / _2_1_ / 2025

NOTARY ACKNOWLEDGEMENT

State of Pennsylvania   }
                        } ss.
County of Chester       }

The foregoing instrument was acknowledged before me via physical presence this _21st_ day of
_November_____, 2025 and the above-named individual produced identification identifying
each as the same.

Signature: _____

Printed Name of Notary Public: _Mallory Aronoff_

Notary Public

My Commission Expires: _May 11 2026._

Commonwealth of Pennsylvania - Notary Seal
Mallory Aronoff, Notary Public
Montgomery County
My commission expires May 11, 2026
Commission number 1255810
Member, Pennsylvania Association of Notaries

# "EXHIBIT A"

## Your CUSIP Results are as follows:

**ANDREW ROBERT MCLELLAN (MTG 8029225409)**
**4159 White Horse Drive, Malvern, PA 19355**
**TCW Global Real Estate Fund**
Symbol:                  TGREX
CUSIP:                   **872365796**

Inception Date:          12/1/2014
Net Assets:              $30,271,000.00 as of
                         1/21/2023
Portfolio Assets:        $30,271,000.00 as of
                         1/21/2023

### A little about the Fund:

TCW Global Real Estate Fund is an open-end fund incorporated in the USA. The Fund
aims to maximize total return from current income and long-term capital growth. The
Fund invests in equity securities of real estate investment trusts ("REITs") and real estate
companies.



# Note

January 25, 2018                    Malvern                    Pennsylvania
[Date]                              [City]                      [State]

4159 WHITE HORSE ROAD, Malvern, PA 19355
[Property Address]

**1. Borrower's Promise to Pay.** In return for a loan that I have received, I promise to pay U.S. $2,000,000.00 (this amount is called *"Principal"*), plus interest, to the order of the Lender. The Lender is Navy Federal Credit Union. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the *"Note Holder"*.

**2. Interest.** Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 4.500%.

The interest rate required by this Section 2 is the rate I will pay both before and after any Survival Event as defined in this Note.

**3. Payments.**

**(A) Time and Place of Payments.** I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on March 1, 2018. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on February 1, 2048, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the *"Maturity Date"*. I will continue to pay those amounts both before and after any Survival Event as defined in this Note, until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

I will make my monthly payments at 820 Follin Lane, Vienna, VA 22180 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments.** My monthly payment will be in the amount of U.S. $10,133.71.

**4. Borrower's Right to Prepay.**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a *"Prepayment"*. When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. Loan Charges.** If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. Borrower's Failure to Pay as Required.**

PENNSYLVANIA FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services                    2018012416.3.0.3954-J20170605Y

8029225409
Form 3239 2/16
05/2017
Page 1 of 3

**(A) Late Charges for Overdue Payments.** If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000% of my overdue payment of principal and interest.

I will pay this late charge promptly but only once on each late payment.

**(B) Default.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default.** If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder.** Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. I will pay the Note Holder back for those expenses paid by the Note Holder both before and after any Survival Event as defined in this Note.

**7. Giving of Notices.** Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. Obligations of Persons Under This Note.** If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. Waivers.** I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. *"Presentment"* means the right to require the Note Holder to demand payment of amounts due. *"Notice of Dishonor"* means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. Uniform Secured Note.** This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the *"Security Instrument"*), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. Effect of Survival Events.** For purposes of this Note, *"Survival Event"* is defined as follows:

PENNSYLVANIA FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services          2018012416.3.0.3954-J20170805Y

8029225409
Form 3239 2/16
05/2017
Page 2 of 3

(A) any default described in Section 6(B) of this Note;

(B) Noteholder requiring me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount under Section 6(C) of this Note;

(C) Noteholder requiring immediate payment in full of all sums secured by the Security Instrument;

(D) the Maturity Date as defined in this Note;

(E) the entry of any judgment against me under this Note; and

(F) the entry of any judgment under the Security Instrument.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Borrower

_____ Seal

ANDREW R MCLELLAN

[Sign Original Only]

Loan Origination Organization: Navy Federal Credit Union
NMLS ID: 399807

Loan Originator: Terri Steffens
NMLS ID: 659513

PENNSYLVANIA FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services
2018012416.3.0.3954-J20170005Y



### COUNTY OF CHESTER
### OFFICE OF RECORDER OF DEEDS
www.chesco.org/recorder

**DIANE O'DWYER**, Recorder
**NANCY W. PINE**, Esquire, Solicitor

**ALEX CHRISTY**, First Deputy
**FRANCINE JENKINS**, Second Deputy

I HEREBY CERTIFY that the attached copy is a true copy of a(n)

# MORTGAGE

*FROM:*
    NAME: MCLELLAN, ANDREW R

*TO:*
    NAME: NAVY FEDERAL CREDIT UNION

recorded in the Recorder of Deeds office in and for Chester County,

Pennsylvania, in *Book 9690Page 1337*

Witness my hand and seal of office this *14th* day of *MAY,* 2025 A.D.

*Diane O'Dwyer*

Diane O'Dwyer
Recorder of Deeds

313 W. Market St., Suite 3302, P.O. Box 2748, West Chester, PA 19380-0991
P: (610) 344-6330 • F: (610) 344-6408

11590023 B: 9690 P: 1337 MTG
01/29/2018 12:00:57 PM Page 1 of 19
Rec Fees: $153.75    State: $0.00
Rick Loughery Recorder of Deeds, Chester County, PA



**RECORDER OF DEEDS**

**Prepared By:** Jessica Ortega
5550 Heritage Oaks Drive
Pensacola, FL 32526
(877) 573-2324

**Return To:** Navy Federal Credit Union
P.O. Box 3340
Merrifield, VA 22119
(888) 842-6328

**Premises:** 4159 WHITE HORSE
ROAD, Malvern, PA 19355
Parcel NO. 35-4-74.3N

17P80 9995

# Purchase Money Mortgage

**Definitions.** Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20, 21 and 27. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) *"Security Instrument"* means this document, which is dated January 25, 2018, together with all Riders to this document.

(B) *"Borrower"* is ANDREW R MCLELLAN. Borrower is the mortgagor under this Security Instrument.

(C) *"Lender"* is Navy Federal Credit Union. Lender is a corporation organized and existing under the laws of United States of America. Lender's address is 820 Follin Lane, Vienna, VA 22180. Lender is the mortgagee under this Security Instrument.

(D) *"Note"* means the promissory note signed by Borrower and dated January 25, 2018. The Note states that Borrower owes Lender two million and 00/100 Dollars (U.S. $2,000,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than February 1, 2048.

(E) *"Property"* means the property that is described below under the heading "Transfer of Rights in the Property."

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services                2016012416.3.0.3954.J20170805Y

8029225409
Form 3039 1/01 (rev. 2/18)
04/2017
Page 1 of 18

**(F)** *"Loan"* means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G)** *"Riders"* means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(H)** *"Applicable Law"* means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(I)** *"Community Association Dues, Fees, and Assessments"* means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(J)** *"Electronic Funds Transfer"* means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K)** *"Escrow Items"* means those items that are described in Section 3.

**(L)** *"Miscellaneous Proceeds"* means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M)** *"Mortgage Insurance"* means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N)** *"Periodic Payment"* means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O)** *"RESPA"* means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, RESPA refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services                2018012416.3.0.3954.J20170605Y

6028223409
Form 3039 1/01 (rev. 2/18)
04/2017
Page 2 of 18

**(P)** *"Successor in Interest of Borrower"* means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**Transfer of Rights in the Property.** This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the County [Type of Recording Jurisdiction] of Chester [Name of Recording Jurisdiction]: SEE EXHIBIT A ATTACHED HERETO AND INCORPORATED HEREIN FOR ALL PURPOSES which currently has the address of 4159 WHITE HORSE ROAD [Street] Malvern [City], Pennsylvania 19355 [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the *"Property."*

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**Uniform Covenants.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services                    2018012416.3.0.3954-J20170605Y

8029225409
Form 3039 1/01 (rev. 2/16)
04/2017
Page 3 of 16

insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the *"Funds"*) to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called *"Escrow Items."* At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services                          2018012416.3.0.3954-J20170605Y

8029225409
Form 3039 1/01 (rev. 2/16)
04/2017
Page 4 of 18

11590023 B: 9690 P: 1341 MTG
01/29/2018 12:00:57 PM Page 5 of 19

Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase *"covenant and agreement"* is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services                    2018012416.3.0.3954-J20170605Y

8029225409
Form 3039 1/01 (rev. 2/16)
04/2017
Page 5 of 18

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services                    20180124163.0.3354-J20170605Y

8029225409
Form 3039 1/01 (rev. 2/16)
04/2017
Page 6 of 18

the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services                           2018012416.3.0.3954-J20170605Y

8029225409
Form 3039 1/01 (rev. 2/16)
04/2017
Page 7 of 18

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services                    2018012416.3.0.3954-J20170605Y

8028226409
Form 3039 1/01 (rev. 2/16)
04/2017
Page 8 of 18

or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services                2018012418.3.0.3954-J20170605Y

8029225409
Form 3039 1/01 (rev. 2/16)
04/2017
Page 9 of 18

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(A) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(B) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services              2018012416.3.0.3954-J20170605Y

8029225409
Form 3039 1/01 (rev. 2/16)
04/2017
Page 10 of 18

by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services                    2018012416.3.0.3954-J20170605Y

8029223409
Form 3039 1/01 (rev. 2/16)
04/2017
Page 11 of 18

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services                    2018012416.3.0.3954-J20170605Y

6023225409
Form 3039 1/01 (rev. 2/16)
04/2017
Page 12 of 18

11590023 B: 9690 P: 1349 MTG
01/29/2018 12:00:57 PM Page 13 of 19

charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services                2016012416.3.0.3954-J2017060SY

8029223409
Form 3039 1/01 (rev. 2/16)
04/2017
Page 13 of 18

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services                     20160012416.3.0.3954-J20170605Y

8029225409
Form 3039 1/01 (rev. 2/16)
04/2017
Page 14 of 16

is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns,

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services                 20180124416.3.0.3954-J20170606SY

8029225409
Form 3039 1/01 (rev. 2/16)
04/2017
Page 15 of 16

11590023 B: 9690 P: 1352 MTG
01/29/2018 12:00:57 PM Page 16 of 19

or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**Non-Uniform Covenants.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Effect of Survival Events.** Both before and after any Survival Event, as defined below, Borrower shall:

    (A) pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services                        2018012416.3.0.3954-J20170605Y

8029228409
Form 3039 1/01 (rev. 2/16)
04/2017
Page 16 of 18

(B) pay the amounts and take the actions required by Section 4 of this Security Instrument;

(C) maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;

(D) maintain, repair and restore the Property and take the other actions required by Section 7 of this Security Instrument;

(E) if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

(F) treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;

(G) maintain and pay the premiums for Mortgage Insurance, or make payments to Lender if Mortgage Insurance coverage is not available, and take the other actions required by Section 3 of this Security Instrument;

(H) permit the collection and application of miscellaneous proceeds as required by Section 11 of this Security Instrument;

(I) pay the fees required by Section 14 of this Security Instrument;

(J) continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;

(K) pay any collection expenses under Section 22 of this Security Instrument; and

(L) pay interest at the rate payable from time to time under the Note.

*"Survival Event"* means any of the following:

(A) any default described in the Note;

(B) Lender requiring Borrower to pay immediately the full amount of Principal which has not been paid and all the interest that Borrower owes on that amount under the Note;

(C) Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Note and Sections 18 and 22 of this Security Instrument;

(D) the Maturity Date as defined in the Note;

(E) the entry of any judgment against Borrower under the Note; and

(F) the entry of any judgment under this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**Borrower**

ANDREW R MCLELLAN                    *Seal*

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services          20180124l6.3.0.3954-J20170605Y

8029226409
Form 3039 1/01 (rev. 2/16)
04/2017
Page 17 of 18

**Acknowledgment**

Commonwealth of Pennsylvania

County of _Montgomery_

On _January 25, 2018_, before me, _Nancy F Malkin_ the undersigned officer, personally appeared ANDREW R. MCLELLAN, known to me (or satisfactorily proven) to be the person whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

_Nancy Malkin_
Notary Public

_Nancy F Malkin_
(Print Name)

My commission expires: _____

```
COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
NANCY F. MALKIN, Notary Public
Lower Merion Township, Montgomery County
My Commission Expires October 14, 2021
```

**Certificate of Residence**

I, Jessica Ortega, do hereby certify that the correct address of the within-named Mortgagee is 820 Follin Lane, Vienna, VA 22180.

Witness my hand this January 25, 2018

_Nancy Malkin_
**Agent of Mortgagee**
Jessica Ortega

Loan Origination Organization: Navy Federal Credit Union

NMLS ID: 399807

Loan Originator: Terri Steffens

NMLS ID: 659513

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services          20180012416.3.0.3954-J20170605SY

8029225409
Form 3039 1/01 (rev. 2/16)
04/2017
Page 18 of 18

11590023 B: 9690 P: 1355 MTG
01/29/2018 12:00:57 PM Page 19 of 19

## EXHIBIT "A"

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, situate in the Township of Charlestown, County of Chester, Commonwealth of Pennsylvania, described in accordance with the first plan of subdivision for Four Oaks Farm, made by Chester Valley Engineers, Inc., dated 10/29/1987 and last revised 3/3/1988 and subsequently subject to a second plan of subdivision of Lot 12, made by Steven E. Van Vliet, Professional Engineer, dated 5/12/1990, last recorded 9/21/1990 and recorded in Chester County as Plan No. 10941 as follows, to wit:

BEGINNING at a point on the northwesterly side of White House Road (LR 15134) said point approximately 37 1/2 feet northeast of the centerline (at the position of existing two stone pillars) of the existing drive serving Lot #12, the southern corner of Lot 12A as shown on said plan, thence extending approximately parallel to the existing drive serving Lot 12, north 42 degrees 00 minutes 44 seconds west, 394.17 feet to a point approximately 37 1/2 feet northeast of the centerline of the aforementioned driveway, thence extending along common property line with Lot 12A, north 44 degrees 44 minutes 11 seconds east, 446.93 feet to a point, thence extending along Lots 1, 2 and 3 and along the north side of the bridle path easement, north 45 degrees 15 minutes 49 seconds west, 773.40 feet to an iron pin thence extending along Lots 3, 4 and 5, north 71 degrees 15 minutes 00 seconds west, 372.16 feet to an iron pin, a corner of Lots 5 & 6 on said first plan, thence extending along Lot 6, south 60 degrees 31 minutes 27 seconds west, 221.29 feet to an iron pin, a corner of Lot 8 on said first plan, thence extending along the same the two following courses and distances (1) crossing a 20 foot-wide bridle path easement, south 02 degrees 44 minutes 43 seconds west, 174.31 feet to a point, and (2) south 50 degrees 11 minutes 40 seconds west, 203.07 feet to an iron pin, a corner of Lots 8 and 13 of said first plan, thence extending along Lot 13, south 19 degrees 02 minutes 58 seconds east, 235.92 feet, past the existing pole barn on the east side to a point; thence extending along Lot 13, south 25 degrees 30 minutes 19 seconds west, 322.52 feet to a point approximately 25 feet from the centerline of Union Hill Road (T-522) thence extending parallel to Union Hill Road, south 38 degrees 55 minutes 41 seconds east, 366.91 feet to a point approximately 25 feet from the centerline of Union Hill Road and just upgrade from the inlet of the existing 18 inch reinforced concrete pipe culvert under the road bed of Union Hill Road; thence extending along Lot 10 the two following courses and distances (1) passing through storm water management easement, north 63 degrees 47 minutes 00 seconds east 681.62 feet to a point and (2) passing out of said easement, south 42 degrees 00 minutes 44 seconds east, 565 feet and running approximately parallel to the existing drive serving Lot 12, to a point on the northwesterly side of White Horse Road (LR 15134) thence extending along same, north 41 degrees 09 minutes 30 seconds east, 75.54 feet to the first mentioned point and place of beginning.

BEING LOT #12 as shown on the aforementioned plan.

UPI No. 35-4-74.3N

Being the same property which Andrew J. Sterge and Mary Louise A. Sterge, tenants by the entirety, granted and conveyed unto Thomas H. Kashi and Flora Jaseb Kashi, husband and wife by deed dated September 17, 2004 and recorded September 29, 2004 in the Recorder's Office of said County in Book 6293 Page 737.

AND THE SAID Thomas H. Kashi is also known as Hossein Thomas Kashi.

17PA09995

"EXHIBIT B"

**Your CUSIP Results are as follows:**

**ANDREW MCLELLAN (ACCT 8032656863 [HELOC NAVY FEDERAL CU])**
**Vanguard High-Yield Corporate Fund**
Symbol:                          VWEHX
CUSIP:                          **922031208**

Inception Date:              12/27/1978
Net Assets:                   $24,300,225,000.00 as of
                                     4/5/2025

**A little about the Fund:**

Vanguard High-Yield Corporate Fund seeks a high level of current income by investing
in a diversified group of high-yield, high-risk corporate bonds that are rated below Baa
by Moody's or below BBB by Standard & Poor's. The Fund's benchmark is Bloomberg
U.S. Corporate High Yield Bond Index.





### COUNTY OF CHESTER
### OFFICE OF RECORDER OF DEEDS
www.chesco.org/recorder

**DIANE O'DWYER**, Recorder
**NANCY W. PINE**, Esquire, Solicitor

**ALEX CHRISTY**, First Deputy
**FRANCINE JENKINS**, Second Deputy

I HEREBY CERTIFY that the attached copy is a true copy of a(n)

## MORTGAGE

*FROM:*
   <u>NAME:</u> MCLELLAN, ANDREW R

*TO:*
   <u>NAME:</u> NAVY FEDERAL CREDIT UNION

recorded in the Recorder of Deeds office in and for Chester County,

Pennsylvania, in *Book <u>10014</u>Page <u>1252</u>*

Witness my hand and seal of office this *14th* day of *MAY,* 2025 A.D.



*Diane O'Dwyer*

Diane O'Dwyer
Recorder of Deeds

313 W. Market St., Suite 3302, P.O. Box 2748, West Chester, PA 19380-0991
P: (610) 344-6330 • F: (610) 344-6408

11692065 B: 10014 P: 1252 MTG
10/03/2019 11:26:28 AM Page 1 of 16
Rec Fees: $151.75   State: $0.00
Rick Loughery Recorder of Deeds, Chester County, PA



RECORDER OF DEEDS

Parcel Number

35-004-0074.03N0

**Prepared By:** Kayci Tapia

5550 Heritage Oaks Drive

Pensacola, FL 32526

(877) 573-2324

**Return To:** Navy Federal Credit Union

P.O. Box 3340

Merrifield, VA 22119

(888) 842-6328

**Premises:** 4159 WHITE HORSE RD,
MALVERN, PA 19355-9650

UPi # 35-4-74.3N

# Open-End Mortgage

## This Mortgage secures future advances

The date of this Mortgage *("Security Instrument")* is July 6, 2019.

| **Mortgagor** | **Lender** |
|---|---|
| ANDREW R MCLELLAN | Navy Federal Credit Union |
| 4159 WHITE HORSE RD | Organized and existing under the laws of the United States |
| MALVERN, PA 19355-9650 | 820 Follin Lane |
| | Vienna, VA 22180 |

**1. Conveyance.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys and mortgages to Lender the following described property:

MCLELLAN                PA        OPEN END MORTGAGE
55102178

FIRST AMERICAN ELS

8032858063

Mortgage Open End-PA
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014          2019070318.3.0.2133-J20160323Y
01/2016
Page 1 of 11

11692065 B: 10014 P: 1253 MTG
10/03/2019 11:26:28 AM Page 2 of 16

The Land referred to herein below is situated in the Township of CHARLESTOWN, County of CHESTER, State of Pennsylvania, and is described as follows: DESCRIBED IN ACCORDANCE WITH THE FIRST PLAN OF SUBDIVISION FOR FOUR OAKS FARM MADE BY CHESTER VALLEY ENGINEERS, INC., DATED OCTOBER 29, 1987 AND LAST REVISED MARCH 3, 1988 AND SUBSEQUENTLY SUBJECT TO A SECOND PLAN OF SUBDIVISION OF LOT 12, MADE BY STEVEN E. VAN VLIET PROFESSIONAL ENGINEER, DATED 5/12/1990, LAST RECORDED 9/21/1990 AND RECORDED IN CHESTER COUNTY AS PLAN NO. 10941 AS FOLLOWS, TO WIT: BEGINNING AT A POINT ON THE NORTHWESTERLY SIDE OF WHITE HOUSE ROAD (LR 15134) SAID POINT APPROXIMATELY 37 1/2 FEET NORTHEAST OF THE CENTERLINE (AT THE POSITION OF EXISTING PILLARS) OF THE EXISTING DRIVE SERVING LOT #12, THE SOUTHERN CORNER OF LOT 12A AS SHOWN ON SAID PLAN, THENCE EXTENDING APPROXIMATELY PARALLEL TO THE EXISTING DRIVE SERVING LOT 12, NORTH 42 DEGREES 00 MINUTES 44 SECONDS WEST, 394.17 FEET TO A POINT APPROXIMATELY 37 1/2 FEET NORTHEAST OF THE CENTERLINE OF THE AFOREMENTIONED DRIVEWAY, THENCE EXTENDING ALONG COMMON PROPERTY LINE WITH LOT 12A, NORTH 44 DEGREES 44 MINUTES 11 SECONDS EAST, 446.93 FEET TO A POINT, THENCE EXTENDING ALONG LOTS 1, 2 AND 3 AND ALONG THE NORTH SIDE OF THE BRIDLE PATH EASEMENT, NORTH 45 DEGREES 15 MINUTES 49 SECONDS WEST, 773.40 FEET TO AN IRON PIN THENCE EXTENDING ALONG LOTS 3, 4 AND 5, NORTH 71 DEGREES 15 MINUTES 00 SECONDS WEST, 372.16 FEET TO AN IRON PIN, A CORNER OF LOTS 5 & 6 ON SAID FIRST PLAN, THENCE EXTENDING ALONG LOT 6, SOUTH 60 DEGREES 31 MINUTES 27 SECONDS WEST, 221.29 FEET TO AN IRON PIN, A CORNER OF LOT 8 ON SAID FIRST PLAN, THENCE EXTENDING ALONG THE SAME THE TWO FOLLOWING COURSES AND DISTANCES (1) CROSSING A 20 FOOT-WIDE BRIDLE PATH EASEMENT, SOUTH 02 DEGREES 44 MINUTES 43 SECONDS WEST, 174.31 FEET TO A POINT, AND (2) SOUTH 50 DEGREES 11 MINUTES 40 SECONDS WEST, 203.07 FEET TO AN IRON PIN, A CORNER OF LOTS 8 AND 13 OF SAID FIRST PLAN, THENCE EXTENDING ALONG LOT 13, SOUTH 19 DEGREES 02 MINUTES 58 SECONDS EAST, 235.92 FEET, PAST THE EXISTING POLE BARN ON THE EAST SIDE TO A POINT; THENCE EXTENDING ALONG LOT 13, SOUTH 25 DEGREES 30 MINUTES 19 SECONDS WEST, 322.52 FEET TO A POINT APPROXIMATELY 25 FEET FROM THE CENTERLINE OF UNION HILL ROAD (T-522) THENCE EXTENDING PARALLEL TO UNION HILL ROAD, SOUTH 38 DEGREES 55 MINUTES 41 SECONDS EAST, 366.91 FEET TO A POINT APPROXIMATELY 25 FEET FROM THE CENTERLINE OF UNION HILL ROAD AND JUST UPGRADE FROM THE INLET OF THE EXISTING 18 INCH REINFORCED CONCRETE PIPE CULVERT UNDER THE ROAD BED OF UNION HILL ROAD; THENCE EXTENDING ALONG LOT 10 THE TWO FOLLOWING COURSES AND DISTANCES (1) PASSING THROUGH STORM WATER MANAGEMENT EASEMENT, NORTH 63 DEGREES 47 MINUTES 00 SECONDS EAST 681.62 FEET TO A POINT AND (2) PASSING OUT OF SAID EASEMENT, SOUTH 42 DEGREES 00 MINUTES 44 SECONDS EAST, 565 FEET AND RUNNING APPROXIMATELY PARALLEL TO THE EXISTING DRIVE SERVING LOT 12, TO A POINT ON THE NORTHWESTERLY SIDE

8032656863

Mortgage Open End-PA
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014

2019070318.3.0.2133-J20180323Y

01/2018
Page 2 of 11

OF WHITE HORSE ROAD (LR 15134) THENCE EXTENDING ALONG SAME, NORTH 41
DEGREES 09 MINUTES 30 SECONDS EAST, 75.54 FEET TO THE FIRST MENTIONED POINT
AND PLACE OF BEGINNING. BEING LOT #12 AS SHOWN ON THE AFOREMENTIONED
PLAN. BEING ALL OF THAT CERTAIN PROPERTY CONVEYED TO ANDREW R. MCLELLAN
FROM THOMAS H. KASHI A/K/A HOSSEIN THOMAS KASHI AND FLORA JASEB KASHI,
BY DEED DATED JANUARY 25 2018 AND RECORDED JANUARY 29, 2018 AS BOOK 9690,
PAGE 1333 OF OFFICIAL RECORDS. APN #: 35-004-0074.03N0

Parcel ID Number: 35-004-0074.03N0

The property is located in CHESTER County at 4159 WHITE HORSE RD, MALVERN,
Pennsylvania 19355-9650.

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights,
all water and riparian rights, ditches, and water stock and all existing and future improvements,
structures, fixtures, and replacements that may now, or at any time in the future, be part of the real
estate described above (all referred to as *"Property"*).

**2. Maximum Obligation Limit.** The total principal amount secured by this Security Instrument at
any one time shall not exceed $400,000.00. This limitation of amount does not include interest and
other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not
apply to advances made under the terms of this Security Instrument to protect Lender's security and to
perform any of the covenants contained in this Security Instrument.

**3. Secured Debt and Future Advances.** The term *"Secured Debt"* is defined as follows:
  (A) Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other
      evidence of debt described below and all their extensions, renewals, modifications or
      substitutions.

      The credit agreement signed by ANDREW R MCLELLAN (the *"Borrower"*) and dated
      the same date as this Security Instrument (the *"Note"*). Under the Note, the Lender agrees,
      subject to certain terms, conditions and limitations, to make advances to the Borrower in
      a principal amount outstanding not to exceed four hundred thousand and 00/100 Dollars
      (U.S. $400,000.00). Borrower has promised to pay this debt with interest in regular periodic
      payments and to pay the debt in full no later than August 1, 2059.
  (B) All future advances from Lender to Mortgagor or other future obligations of Mortgagor to
      Lender under any promissory note, contract, guaranty, or other evidence of debt executed
      by Mortgagor in favor of Lender after this Security Instrument whether or not this Security
      Instrument is specifically referenced. If more than one person signs this Security Instrument,
      each Mortgagor agrees that this Security Instrument will secure all future advances and future
      obligations that are given to or incurred by any one or more Mortgagor, or any one or more
      Mortgagor and others. All future advances and other future obligations are secured by this
      Security Instrument even though all or part may not yet be advanced. All future advances and
      other future obligations are secured as if made on the date of this Security Instrument. Nothing

in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

(C) All other obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

(D) All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Mortgagor's principal dwelling that is created by this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails, with respect to that other debt, to fulfill any necessary requirements or to conform to any limitations of Regulation Z and X that are required for loans secured by the Property.

**4. Mortgage Covenants.** Mortgagor agrees that the covenants in this section are material obligations under the Secured Debt and this Security Instrument. If Mortgagor breaches any covenant in this section, Lender may refuse to make additional extensions of credit and reduce the credit limit. By not exercising either remedy on Mortgagor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

**Payments.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees to make all payments when due and to perform or comply with all covenants. Mortgagor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written approval.

**Claims Against Title.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**Property Condition, Alterations and Inspection.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor agrees that the nature of the

8032856803

Mortgage Open End-PA
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014                    2019070318.3.0.2133-J20180323Y

01/2018
Page 4 of 11

11692065 B: 10014 P: 1256 MTG
10/03/2019 11:26:28 AM Page 5 of 16

occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**Authority to Perform.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.

**Assignment of Leases and Rents.** Mortgagor irrevocably grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as *"Leases"*) and rents, issues and profits (all referred to as *"Rents"*). Mortgagor will promptly provide Lender with true and correct copies of all existing and future Leases. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default under the terms of this Security Instrument.

Mortgagor agrees that this assignment is immediately effective between the parties to this Security Instrument and effective as to third parties on the recording of this Security Instrument, and this assignment will remain effective until the Secured Debts are satisfied. Mortgagor agrees that Lender is entitled to notify Mortgagor or Mortgagor's tenants to make payments of Rents directly to Lender after such recording, however Lender agrees not to notify Mortgagor's tenants until Mortgagor defaults and Lender notifies Mortgagor of the default and demands that Mortgagor and Mortgagor's tenants pay all Rents directly to Lender. On receiving notice of default, Mortgagor will endorse and deliver to Lender any payment of Rents in Mortgagor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Mortgagor warrants that no default exists under the Leases or any applicable landlord/tenant law. Mortgagor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

**Leaseholds; Condominiums; Planned Unit Developments.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of

Mortgage Open End-PA
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014            2019070318.3.0.2133-J20180323Y

00326566663

01/2018
Page 5 of 11

11692065 B: 10014 P: 1257 MTG
10/03/2019 11:26:28 AM Page 6 of 16

Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**Condemnation.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**Insurance.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause". Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**Financial Reports and Additional Documents.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

8032856883

Mortgage Open End-PA
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014               2019070318 3 0.2133-J20180323Y

01/2018
Page 6 of 11

**5. Warranty of Title.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell and mortgage the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

**6. Due on Sale.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**7. Warranties and Representations.** Mortgagor has the right and authority to enter into this Security Instrument. The execution and delivery of this Security Instrument will not violate any agreement governing Mortgagor or to which Mortgagor is a party.

**8. Default.** Mortgagor will be in default if any of the following occur:

**Fraud.** Any Borrower engages in fraud or material misrepresentation in connection with the Secured Debt that is an open end home equity plan.

**Payments.** Any Borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due.

**Property.** Any action or inaction by Borrower or Mortgagor occurs that adversely affects the Property or Lender's rights in the Property. This includes, but is not limited to, the following: (a) Mortgagor fails to maintain required insurance on the Property; (b) Mortgagor transfers the Property; (c) Mortgagor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction adversely affects Lender's security; (d) Mortgagor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument; (e) a sole Mortgagor dies; (f) if more than one Mortgagor, any Mortgagor dies and Lender's security is adversely affected; (g) the Property is taken through eminent domain; (h) a judgment is filed against Mortgagor and subjects Mortgagor and the Property to action that adversely affects Lender's interest; or (i) a prior lienholder forecloses on the Property and as a result, Lender's interest is adversely affected.

**Executive Officers.** Any Borrower is an executive officer of Lender or an affiliate and such Borrower becomes indebted to Lender or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

**9. Remedies on Default.** In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default. In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions.

Mortgage Open End-PA
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014                    2019070318 3.0.2133-J20180323Y

6032656983

01/2016
Page 7 of 11

At the option of the Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

**10. Expenses; Advances on Covenants; Attorneys' Fees; Collection Costs.** If Mortgagor breaches any covenant in this Security Instrument, Mortgagor agrees to pay all expenses Lender incurs in performing such covenants or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and Lender's security interest. These expenses are payable on demand and will bear interest from the date of payment until paid in full at the highest rate of interest in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. To the extent permitted by the *United States Bankruptcy Code*, Mortgagor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

**11. Environmental Laws and Hazardous Substances.** As used in this section, (1) *"Environmental Law"* means, without limitation, the *Comprehensive Environmental Response, Compensation and Liability Act* (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) *"Hazardous Substance"* means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:
- (A) Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.
- (B) Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

Mortgage Open End-PA
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014                2019070318.3.0.2133-J20180323Y

8032656863

01/2018
Page 8 of 11

11692065 B: 10014 P: 1260 MTG
10/03/2019 11:26:28 AM Page 9 of 16

(C) Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.

(D) Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

**12. Escrow for Taxes and Insurance.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

**13. Joint and Individual Liability; Co-Signers; Successors and Assigns Bound.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

**14. Severability; Interpretation.** This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

**15. Notice.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address in this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

**16. Waivers.** Except to the extent prohibited by law, Mortgagor waives any right to appraisement relating to the Property.

**17. Line of Credit.** The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

8032656663

Mortgage Open End-PA
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014          2019070318.3.0.2133-J20180323Y

01/2018
Page 9 of 11

**18. Applicable Law.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. Any provision that appoints Lender as an agent is not subject to the provisions of 20 *"Pa.C.S.A."* Section 5601 et seq. (Chapter 56; *Decedents, Estates and Fiduciaries Code*). Lender, by exercising any of its rights under this Security Instrument, does so for the sole benefit of Lender.

**19. Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument.

[Check all applicable boxes]

☐ Assignment of Leases and Rents ☒ Other: Option to Convert to a Fixed Equity Loan Rider, Escrow Rider

**20. ☐ Purchase Money.** This Security Instrument secures advances by Lender used in whole or in part to acquire the Property. Accordingly, this Security Instrument, and the lien hereunder, is and shall be construed as a purchase money mortgage with all of the rights, priorities and benefits thereof under the laws of the Commonwealth of Pennsylvania.

**21. ☐ Open-End Mortgage Securing Construction Advances.** This Security Instrument secures advances by Lender used in whole or in part to complete erection, construction, alteration or repair of the Property. Accordingly, this Security Instrument, and the lien hereunder, is and shall be construed as an open-end mortgage securing construction advances, with all of the rights, priorities and benefits thereof under the laws of the Commonwealth of Pennsylvania.

**22. ☒ Notice to Borrower. THIS DOCUMENT CONTAINS PROVISIONS FOR A VARIABLE INTEREST RATE.**

**23. ☐ Additional Terms.** _____

## Signatures

By signing below, Mortgagor, intending to be legally bound hereby, agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated in this Security Instrument.

**Mortgagor**

_____   7/6/19
ANDREW R MCCLELLAN               Date

6032856863

Mortgage Open End-PA
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014          2019070318.3.0.2133-J20180323Y

01/2018
Page 10 of 11

**Acknowledgment**

Commonwealth of Pennsylvania

County of Chester

On _July 6, 2019_, before me, _J Ronald White_ the undersigned officer, personally appeared  ANDREW R MCLELLAN , known to me (or satisfactorily proven) to be the person whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

_J Ronald White_
Notary Public

Commonwealth of Pennsylvania - Notary Seal
J RONALD WHITE - Notary Public
Philadelphia County
My Commission Expires Oct 23, 2021
Commission Number 1278222

_J Ronald White_
(Print Name)

My commission expires: _10/23/2021_

**Certificate of Residence**

I, Kayci Tapia, do hereby certify that the correct address of the within-named Mortgagee is 820 Follin Lane, Vienna, VA 22180.

Witness my hand this July 6, 2019

_Kayci Tapia_
Agent of Mortgagee
Kayci Tapia

Mortgage Open End-PA
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014

2019070318.3.0.2133-J20160323Y

6032856903

01/2018
Page 11 of 11

## OPTION TO CONVERT TO A FIXED EQUITY LOAN RIDER

THIS OPTION TO CONVERT TO A FIXED EQUITY LOAN RIDER is made this 6th of July 2019, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Home Equity Line Truth-in-Lending and Agreement to Navy Federal Credit Union ("Lender") covering the Property described in the Security Instrument and located at:

4159 WHITE HORSE RD, MALVERN, PA 19355-9650
[Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.    **OPTION TO CONVERT TO A FIXED EQUITY LOAN**
The Home Equity Truth-in-Lending and Agreement provides for the option for Borrower to convert to a fixed equity loan as follows:

1.    OPTION TO CONVERT TO A FIXED EQUITY LOAN Borrower has agreed to pay according to the loan terms as listed in the Home Equity Line Truth-in-Lending and Agreement. However, unless Borrower is in default or this addendum will not permit it, Borrower has the option to convert their Home Equity Line to the rate and terms of a Fixed Equity Loan. Certain conditions must be met prior to exercising the Option to Convert. Those conditions are: (i) Borrower must give the Lender notice that they want to convert; (ii) at time of conversion Borrower must not be in default, in the Promotional Rate Period or in a Repayment Period under the Home Equity Line Truth-in-Lending and Agreement or the Security Instrument and the loan must be greater than six months old; (iii) by a date specified by the Lender, Borrower must pay the Lender a conversion fee of U.S. $150; (iv) Borrower must sign and give the Lender any documents the Lender requires to effect the conversion, and (v) the loan must meet other loan qualifications as set forth by the Lender. The rate and terms will be those in effect for the 6 to 20 year Fixed Equity Loan, based on the loans original loan-to-value, at the time the Option to Convert is exercised. Upon Borrower exercising the Option to Convert, the Lender will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal Borrower is expected to owe upon the conversion in full on the Maturity Date at the new fixed interest rate in substantially equal payments. The result of this calculation will be the new amount of Borrower's monthly payment. Beginning the Borrower's first monthly payment after the Option to Convert has been exercised; Borrower will pay the new amount as the monthly payment until the Maturity Date.

THIS RIDER DOES NOT CONSTITUTE YOUR NOTICE TO CONVERT. THIS IS NOT A MODIFICATION AGREEMENT.

11692065 B: 10014 P: 1263 MTG
10/03/2019 11:26:28 AM Page 12 of 16

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Option to Convert to a Fixed Equity Loan Rider.

_____    7/6/19    _____
ANDREW R MCLELLAN          Date                               Date

_____              _____
                     Date                               Date

11692065 B: 10014 P: 1264 MTG
10/03/2019 11:26:28 AM Page 13 of 16

DOC#: 690802                                                LOAN #: 6032656883

11692065 B: 10014 P: 1265 MTG
10/03/2019 11:26:28 AM Page 14 of 16

Loan No.8032656863

## Escrow Rider

This ESCROW RIDER is made this 6th day of July 2019, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Grantor/Mortgagor") to secure the Borrower's Home Equity Line Truth-in-Lending and Agreement to Navy Federal Credit Union ("Lender")covering the Property described in the Security Instrument and located at:

4159 WHITE HORSE RD, MALVERN, PA 19355-9650
[Property Address]

and more specifically described in the attached legal description to the Security Instrument.

## COVENANTS

Grantor/Mortgagor and Lender covenant and agree to the following provisions and the following shall not replace or be in conflict with any other provisions in the Security Instrument on the same or similar item but shall be in addition to and clarify such provisions:

**Claims Against Title.** Grantor/Mortgagor shall pay all taxes, assessments, liens, encumbrances, charges, fines, and impositions attributable to the Property which can attain priority over the Security Instrument, leasehold payments or ground rents on the Property, if any, and Homeowners or Community Association dues, fees, and assessments, if any.

Grantor/Mortgagor shall promptly discharge any lien which has priority over the Security Instrument unless Grantor/ Mortgagor: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Grantor/Mortgagor is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to the Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over the Security Instrument, Lender may give Grantor/Mortgagor a notice identifying the lien. Within 10 days of the date on which that notice is given, Grantor/ Mortgagor shall satisfy the lien or take one or more of the actions set forth above in this Section entitled **Claims Against Title.**

Lender may require Grantor/Mortgagor to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**Insurance.** If Grantor/Mortgagor fails to maintain any of the coverages described in the Security Instrument, Lender may, at Lender's option and Grantor/Mortgagor's expense, obtain insurance coverage to protect Lender's rights in the Property according to the terms of the Security Instrument.

Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but may or may not protect Grantor/Mortgagor, Grantor/Mortgagor's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Grantor/Mortgagor acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Grantor/Mortgagor previously had in place or could have obtained themselves. Any amounts disbursed by Lender under this section entitled Insurance shall become additional debt of Grantor/Mortgagor secured by the Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be

payable, with such interest, upon notice from Lender to Grantor/Mortgagor requesting payment. Lender shall have the right to hold the policies and renewal certificates.

In the event of loss and during any repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may at Lender's discretion and sole determination disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Grantor/Mortgagor any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Grantor/Mortgagor shall not be paid out of the insurance proceeds and shall be the sole obligation of the Grantor/Mortgagor. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Grantor/Mortgagor. Such insurance proceeds shall be applied in the order provided for in the Note or Security Instrument.

If Grantor/Mortgagor abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters in Lender's sole discretion. If Grantor/Mortgagor does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property or otherwise, Grantor/Mortgagor hereby assigns to Lender (a) Grantor/Mortgagor's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or the Security Instrument, and (b) any other of Grantor/Mortgagor's rights (other than the right to any refund of unearned premiums paid by Grantor/Mortgagor) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or the Security Instrument, whether or not then due.

Lender may require Grantor/Mortgagor to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which might reasonably affect such determination or certification. Grantor/Mortgagor shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Grantor/Mortgagor.

11692065 B: 10014 P: 1266 MTG
10/03/2019 11:26:28 AM Page 15 of 16

## ESCROW

The **ESCROW FOR TAXES AND INSURANCE** section is revised to read as follows:

As provided in this separate agreement, Grantor/Mortgagor and Lender covenant and agree that Grantor/Mortgagor shall:

At least annually, provide proof of insurance coverages and payment of property taxes for the Property within 30 days of a request by Lender. Lender will be permitted to create an escrow account upon the occurrence of any of the following events (i) Grantor/Mortgagor fails to provide to Lender acceptable evidence of property tax payments for the Property, (ii) the receipt by Lender of delinquent tax bills for the Property or insurance cancellation notices for coverages protecting the Property, or (iii) in the event Grantor/Mortgagor is in default of any terms of the loan or Security Instrument. In the event that Lender exercises Lender's right to establish an escrow account for taxes and insurance, the escrow account will be established as set forth below.

Grantor/Mortgagor shall pay to Lender a sum to provide for payment of amounts due for: (a) yearly taxes and assessments and other items on the Property which can attain priority over the Security Instrument; (b) yearly leasehold payments or ground rents on the Property, if any; and (c) yearly premiums for any and all insurance required by Lender including but not limited to hazard property insurance, flood insurance, as applicable. These items are called "Escrow

Items." At any time during the term of the Loan, Lender may require that Homeowner's or Community Association Dues, Fees, and Assessments, if any, be escrowed by Grantor/Mortgagor, and such dues, fees, and assessments shall be an Escrow Item. The amount Grantor/Mortgagor pays to Lender for the Escrow Items will be referred to as the "Funds". Grantor/Mortgagor shall promptly furnish to Lender all notices of amounts to be paid under this Section. Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender may require for a federally related mortgage loan under RESPA, as amended. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law. Grantor/Mortgagor shall then be obligated to pay to Lender any such amount.

Grantor/Mortgagor shall make the payment of the Funds for the Escrow Items on the day that Periodic Payments are normally due under the Note, until the Note is paid in full and the credit line is closed. Grantor/Mortgagor shall pay those amounts to Lender unless Lender tells Grantor/Mortgagor, in writing, that Grantor/Mortgagor does not have to do so, or unless otherwise required by law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Grantor/Mortgagor for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Grantor/Mortgagor interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Grantor/Mortgagor any interest or earning on the Funds. Lender shall give to Grantor/Mortgagor, without charge, an annual accounting of the Funds as required by RESPA, which will include all additions to and deductions from the Funds as well as the reason for each deduction.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Grantor/Mortgagor for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Grantor/Mortgagor in writing or as required by RESPA, and Grantor/Mortgagor shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA. Grantor/Mortgagor shall pay to Lender the amount necessary to make up the deficiency in no more than 12 monthly payments, subject to and in accordance with RESPA.

If by reason or any default under the Security Instrument, Lender declares all Secured Debt due and payable, Lender may apply any Funds toward the payment of the Secured Debt.

Upon payment in full of all sums secured by this Security Instrument and the credit line is closed, Lender shall promptly refund to Grantor/Mortgagor any Funds held by Lender.


BY SIGNING BELOW, Grantor/Mortgagor accepts and agrees to the terms and provisions contained in this ESCROW RIDER.

_(signature)_ _____    7/6/19
ANDREW R MCLELLAN                          Date

_____    _____
Date                        Date

_____    _____
Date                        Date

11692065 B: 10014 P: 1267 MTG
10/03/2019 11:26:28 AM Page 16 of 16

# "EXHIBIT C"

## Your CUSIP Results are as follows:

**ANDREW MCLELLAN (REG MAIL RA620-710-765US [DRAFT])**
**American Century Short-Term Government Fund**
Symbol:                TWAVX
CUSIP:                 **025081845**
ISIN:                  US0250818459
Inception Date:        7/8/1998
Net Assets:            $204,844,000.00 as of
                       4/5/2025

## A little about the Fund:

American Century Short-Term Government Fund is an open-end fund incorporated in the USA. The Fund seeks high current income while maintaining safety of principal by investing in U.S. government securities, including U.S. Treasury securities and other securities issued or guaranteed by the U.S. government. It has a Bloomberg Benchmark.



Case NO.: 2024-05881 & 24-12201

## BILL OF EXCHANGE – BILL OF ACCEPTANCE
## TIME DRAFT

## ALLOCATION PLAN

In accordance with and presented under authority of Public Resolution HJR 192 of 5 June 1933, now Public Law 73-10, UCC § 3-419, UCC § 3-l04(c), and Registered Adjustment of Account; Trustee/Bailor/Secured Party-Creditor on behalf of the Estate hereby issue Letter of Advice and Bill Of Exchange for the following accounts for Full Discharge, Settlement, and Restoration of the Record.

Bill Of Exchange listed value totals; declared account payment in full (listed below), 1 additional monthly payment to cover daily pro rata expenses (where applies), 7% processing/servicing fee for Navy Federal Credit Union. Copies of the B.O.E. have been attached to this Payment Plan. As Fiscal Agent for The United States of America, B.O.E. originals have been delivered directly to the Judge's Chambers, guaranteeing Safe Passage to The United States Treasury.

1. Navy Federal Credit Union – Account #8029225409     **$2,829,900.21**

   - Principal     $2,106,506.29
   - Balance Past Due     $480,911.66
   - Monthly Payment (July, Aug, Sept, Oct) ($14,337.15 *4)     $57,348.60
   - Sub-Total     $2,644,766.55
   - 7% processing/servicing fee     $185,133.66

2. Navy Federal Credit Union – Account #8032656863     **$625,523.10**

   - Principal     $428,293.45
   - Balance Past Due     $139,082.21
   - Monthly Payment (July, Aug, Sept, Oct) ($4,306.34 *4)     $17,225.36
   - Sub-Total     $584,601.02
   - 7% processing/servicing fee     $40,922.08

3. TOTAL ALLOCATION – BILL OF EXCHANGE     **$3,455,423.31**
   ACCT #8029225409 &
   ACCT #8032656863

## LETTER OF ADVICE

### NOT SUBJECT TO NEGOTIABILITY – ACCEPTED FOR VALUE

Ref: Account Nos. 8029225409 & 8032656863        Date: September 9th, 2024

Attn: NAVY FEDERAL CREDIT UNION,        McLellan, Andrew, Trustee/Bailor
AS TRUSTEE, BAILEE        c/o 4159 White Horse Road-Pennsylvania-19355
Dietrich Kuhlman, Fiduciary TTEE        PA Debtor Index File # 100536-1976
820 Follin Lane SE, Vienna, Virginia U.S.A. 22180        Depositors Social Security Account # 196560710

Re: NOTICE- Processing of Bill of Exchange (BOE-Time Draft)

The Fiduciary Trustee, NAVY FEDERAL CREDIT UNION, is in receipt of the (BOE-TD) for processing of which will satisfy the entire current amount stated on purported claims/BK payment plan agreement herein Accepted for Value. This Negotiable Instrument is presented under authority of Public Law 73-10, UCC § 3-419, UCC § 3-104(c), *Spencer v Sterling Bank*, 63 Cal App. 4th 1055 (1998), *Guaranty Trust Co of New York v Henwood et al.* 59 S. Ct 847, *Bank One National Association, Etc. vs. Robert E. Ward & Sara S. Fugate, et al. 7th Cir Volusia County, FL Case #2001-31518-CICI*, and *Witkin Negotiable Instruments*, Vol 3 (2001 Supplement) on the undersigned's UCC Contract Trust Account. The following are the steps required to settle this account. This is not a Treasury/ Bond Account. Any fiscal agent or District Court of the United States may accept this BOE-TD for safe passage to the Treasury.

1. The enclosed Negotiable Instrument is hereby presented, and the following process *must be followed to the letter,* to satisfy the obligation due on the above accounts and discharge of this debt; and

2. Payment may only be accessed with any approval through the account of NAVY FEDERAL CREDIT UNION and directly to the Secretary of the Treasury. The Negotiable Instrument must be presented by Claimants'/Bailee's financial institution via Certified or Registered mail directly to the Secretary of the Treasury-Department of the Treasury Bank (Federal Window), 1500 Pennsylvania Avenue, NW, Washington, District of Columbia 20220, Attn: Janet Yellen; and

3. The item processor at Claimant's financial institution, with full identification and BAILEE (Authorized Agent) signature, is to present the original Negotiable Instrument along with the Instruction Notice (LOA) and the stamped claim to the Secretary of the Treasury-Department of the Treasury Bank at the above address; and

4. Claimant's financial institution is to retain copies of the document and request a copy of the Return Receipt from the Federal Window be supplied to them noting the date of the original Negotiable Instrument was received at the Federal Window in accordance with Public and Banking Policy; and

5. The copy of the Negotiable Instrument is to be held at the financial institution until the required period until the full-face amount of the Negotiable Instrument is automatically released by the local commercial pass-through financial institution for credit to Claimants'/Bailees' accounts and discharge and lodge an entry of satisfaction onto Chester County, Pennsylvania of all said claims; and

6. If the Secretary of the Treasury (Drawee) sends a Notice, in writing of some error(s) or problem(s), please notify the undersigned Trustee/Bailor immediately upon receipt of such Notice and the matter will be addressed with the Department of the Treasury Banks' federal window. You will be notified of the corrective action taken, if any.

Thank you for your cooperation in getting the accounts settled, claim discharges, and entry of satisfaction recorded.

/s _____, Andrew R. McLellan
Trustee/Bailor/Secured Party - Creditor

$ 3,455,424.00                                     $ 3,455,424.00

## BILL OF EXCHANGE
Bill of Acceptance - Time Draft

Andrew R. McLellan, Trustee/Bailor/Secured Party - Creditor          Date: September 9TH, 2024
PA Debtor Index File # 100536-1976
DSSAN 196560710
c/o 4159 Whitehorse Road
PENNSYLVANIA U.S.A. [19355]

**To:**     Secretary of the Treasury, Department of the Treasury Bank- Ledger # 00000518

On or by SEPTEMBER 27TH, 2024, Credit the account of the fiduciary/fiscal agent, **NAVY FEDERAL CREDIT UNION.,** as Bailee for Account Nos. 8029225409 & 8032656863

**(THREE MILLION, FOUR HUNDRED FIFTY-FIVE THOUSAND, FOUR HUNDRED AND TWENTY-FOUR DOLLARS AND ZERO CENTS) U.S. Notes**

Personal Direct Treasury (UCC Contract) Trust Account # RA- 620 710 765 US

The obligation of the Drawee (acceptor), Secretary of the Treasury, through the Bailee (authorized fiduciary agent for the Commonwealth of Pennsylvania) of Claimant's financial institution, hereof arises out of the want of consideration for the pledge and by the redemption of the pledge under Public Resolution HJR 192 of 5 June 1933, now Public Law 73-10, UCC § 3-419, UCC § 3-l04(c), *Spencer* v *Sterling Bank*, 63 Cal App. 4th 1055 (1998), *Guaranty Trust Co of New York* v *Henwood et al.* 59 S. Ct 847, and *Witkin Negotiable Instruments,* Vol 3 (2001 Supplement) on the undersigned's UCC Contract Trust Account, represented by the attached Claim/payment plan agreement Accepted for Value and bearing the account number **# 8029225409 & 8032656863.**

This Claim document is hereby surrendered to Claimant as said pledge is redeemed and (discharged) by the drawer through the attached document of Acceptance for Value and Exempt from Levy. The Claimant's financial institution is to accept this bill, sign and present it directly via Certified or Registered mail, Return Receipt to the Secretary of the Treasury-Department of the Treasury. Unless the original Negotiable Instrument is dishonored in writing within **(15)** days of receipt by the Secretary of the Treasury, Claimant's financial institution is to release the credit to the payee within the time stipulated pursuant to **Regulation "Z", *Truth In Lending Act*** or on the date designated, whichever is later. The amount of this Accepted Draft is to be credited by Claimant's financial institution to the designated account and discharge of this claim fifteen (15) days after receipt by the Federal Window **(Regulation Z).**

**NOTICE:** The law relating to Principal and Agent applies and those between Bailor and Bailee. The Fiduciary Trustee below is authorized to execute legal documents pertaining to fiduciary matters before **Chester County** and authorized to receive and collect any sums due or owing to the trust or the estate held by the named person above and enter satisfaction in any Court of Record in **Chester County, Pennsylvania** or any other County elsewhere.

By: _____
     **Bailee's signature (authorized agent)**
     **Dietrich Kuhlman, Fiduciary TTEE**
     Authorized by the United States of America, Secretary of Treasury

     /s/ _Andrew R McLellan_____, **Trustee/Bailor/Secured Party - Creditor**
     Without Recourse, All Rights Reserved

$ 3,455,424.00                                     $ 3,455,424.00

SATISFACTION OF MORTGAGE & HELOC - Case Nos. 2022-05881-RC & 24-12201



**NAVY FEDERAL Credit Union**

Member Service 1-888-842-6328
www.navyfederal.org
P.O. Box 3302 • Merrifield, VA 22119-3302

## MONTHLY FIRST MORTGAGE STATEMENT

| Account Number | 8029225409 |
|---|---|
| Statement Date | 08/15/2024 |
| Payment Date | 09/01/2024 |
| Payment Amount | $43,011.45 |

9-796-38456-0000662-001-1-010-000-000-000

ANDREW R MCLELLAN
4159 WHITE HORSE RD
MALVERN PA 19355-9650

*Accepted for Value.*
*Andw R. McLellan, 9/9/24*

### Bankruptcy Message

Our records show that the mortgage account is in bankruptcy. We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you.

If the bankruptcy plan requires regular monthly mortgage payments be sent to the Trustee, you should pay the Trustee instead of us. Please contact your attorney or the Trustee if you have questions.

**If you want to stop receiving statements, write to us.**

## Account Information

| | |
|---|---|
| Borrower's Name: | ANDREW R MCLELLAN |
| Property Address: | 4159 WHITE HORSE RD |
| | MALVERN PA 19355 |
| Borrower Access Number | 11475775 |
| Principal Balance | 2,106,506.29 |
| Deferred/Cramdown Amount | 0.00 |
| Escrow Balance | 0.00 |
| Escrow Advance Balance | 134,706.35 |
| Suspense Balance | 0.00 |
| Interest Rate | 4.000% |

The balance shown does not include the payoff interest calculations. If you need a payoff figure, Member Service Representatives are available at 1-888-842-6328 during the following hours: Monday - Saturday: 7:00am-Midnight, Sunday. Noon-Midnight, Eastern Time.

If you are experiencing Financial Difficulty: Contact Navy Federal's Member Outreach Team to know your Loss Mitigation options to avoid Foreclosure at 1-888-503-7102. Housing Counselor Information: If you would like counseling or assistance, you can contact the following: U.S. Department of Housing and Urban Development (HUD): For a list of homeownership counselors or counseling organizations in your area, go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287.

## Past Payments Breakdown

| Description | Paid Last Month | Paid Year to Date |
|---|---|---|
| First Principal | 0.00 | *0.00 |
| Interest | 0.00 | *0.00 |
| Escrow (Taxes & Insurance) | 0.00 | *0.00 |
| Life Insurance | 0.00 | *0.00 |
| Fees and Charges | 0.00 | *0.00 |
| Expenses Paid | 0.00 | *0.00 |
| Partial Payment / Suspense | 0.00 | ** |
| **Total** | **0.00** | **0.00** |

* Do not use these figures for reporting to the IRS. You will receive an annual year-end statement for tax purposes.

## Explanation of Payment Amount
### (Post-Petition Payment)

| | |
|---|---|
| Principal | $3,387.39 |
| Interest | $6,669.39 |
| Escrow | $4,280.37 |
| **Regular Monthly Payment** | **$14,337.15** |
| Past Unpaid Amount | $28,674.30 |

### Fees and Charges

| | |
|---|---|
| Total Fees and Charges | $0.00 |
| **Total Payment Amount** | **$43,011.45** |

**The Payment Amount does not include any amount that was past due before you filed for bankruptcy.**

### Summary of Amounts Past Due Before Bankruptcy
#### (Pre-Petition Arrearage)

| | |
|---|---|
| Paid Last Month | $0.00 |
| Total Paid During Bankruptcy | $0.00 |
| Current Balance | $480,911.66 |

This box shows amounts that were past due when you filed for bankruptcy. It may also include other allowed amounts on the mortgage loan. The trustee is sending us the payments shown here. These are separate from the regular monthly mortgage payment.

## Important Messages

We have not received all of the mortgage payments since you filed for bankruptcy.

This statement may not show recent payments you sent to the Trustee that the Trustee has not yet forwarded to us. Please contact your attorney or the Trustee if you have questions.

 **NAVY FEDERAL Credit Union**

Member Service 1-888-842-6328
www.navyfederal.org
P.O. Box 3302 • Merrifield, VA 22119-3302

**MONTHLY FIXED EQUITY STATEMENT**

| | |
|---|---|
| Account Number | 8032656863 |
| Statement Date | 08/15/2024 |
| Payment Date | 09/01/2024 |
| Payment Amount | $12,919.02 |

6-796-38456-0000804-001-1-010-000-000-000



ANDREW R MCLELLAN
4159 WHITE HORSE RD
MALVERN PA 19355-9650

*Accepted for Value.*
*Andw R M /Jell*, 9/9/24

**Bankruptcy Message**

Our records show that the mortgage account is in bankruptcy. We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you.

If the bankruptcy plan requires regular monthly mortgage payments be sent to the Trustee, you should pay the Trustee instead of us. Please contact your attorney or the Trustee if you have questions.

If you want to stop receiving statements, write to us.

## Account Information

| | |
|---|---|
| Borrower's Name: | ANDREW R MCLELLAN |
| Property Address: | 4159 WHITE HORSE RD |
| | MALVERN PA 19355 9650 |
| Borrower Access Number | 11475775 |
| Principal Balance | 428,293.45 |
| Deferred/Cramdown Amount | 0.00 |
| Escrow Balance | 0.00 |
| Escrow Advance Balance | 0.00 |
| Suspense Balance | 0.00 |
| Interest Rate | 6.000% |

The balance shown does not include the payoff interest calculations. If you need a payoff figure, Member Service Representatives are available at 1-888-842-6328 during the following hours: Monday - Saturday, 7:00am-Midnight, Sunday, Noon-Midnight, Eastern Time.

If you are experiencing Financial Difficulty: Contact Navy Federal's Member Outreach Team to know your Loss Mitigation options to avoid Foreclosure at 1-888-503-7102. Housing Counselor Information: If you would like counseling or assistance, you can contact the following: U.S. Department of Housing and Urban Development (HUD): For a list of homeownership counselors or counseling organizations in your area, go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287.

## Explanation of Payment Amount
### (Post-Petition Payment)

| | |
|---|---|
| Principal | $2,631.85 |
| Interest | $1,674.49 |
| Escrow | $0.00 |
| **Regular Monthly Payment** | **$4,306.34** |
| Past Unpaid Amount | $8,612.68 |
| **Fees and Charges** | |
| Total Fees and Charges | $0.00 |
| **Total Payment Amount** | **$12,919.02** |

The Payment Amount does not include any amount that was past due before you filed for bankruptcy.

### Summary of Amounts Past Due Before Bankruptcy
### (Pre-Petition Arrearage)

| | |
|---|---|
| Paid Last Month | $0.00 |
| Total Paid During Bankruptcy | $0.00 |
| Current Balance | $139,082.21 |

This box shows amounts that were past due when you filed for bankruptcy. It may also include other allowed amounts on the mortgage loan. The trustee is sending us the payments shown here. These are separate from the regular monthly mortgage payment.

## Past Payments Breakdown

| Description | Paid Last Month | Paid Year to Date |
|---|---|---|
| First Principal | 0.00 | *0.00 |
| Interest | 0.00 | *0.00 |
| Restricted Escrow Balance | 0.00 | *0.00 |
| Life Insurance | 0.00 | *0.00 |
| Fees and Charges | 0.00 | *0.00 |
| Expenses Paid | 0.00 | ** |
| Partial Payment / Suspense | 0.00 | ** |
| **Total** | **0.00** | **0.00** |

*Do not use these figures for reporting to the IRS. You will receive an annual year-end statement for tax purposes.

### Important Messages

We have not received all of the mortgage payments since you filed for bankruptcy.

This statement may not show recent payments you sent to the Trustee that the Trustee has not yet forwarded to us. Please contact your attorney if you have questions.

ALERT: TROPICAL CYCLONE HELENE, FLOODING, AND SEVERE WEATHER IN THE SOUTHEA...

# USPS Tracking®

FAQs >

Remove ✕

**Tracking Number:**

# RF620710765US

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item was delivered to an individual at the address at 11:29 am on September 16, 2024 in VIENNA, VA 22180.

## Delivered

**Delivered, Left with Individual**

VIENNA, VA 22180
September 16, 2024, 11:29 am

**See All Tracking History**

What Do USPS Tracking Statuses Mean? **(https://faq.usps.com/s/article/Where-is-my-package)**

Feedback

Text & Email Updates                                          ⌄

Product Information                                            ⌄

**See Less** ⌃

Track Another Package

Enter tracking or barcode numbers

# "EXHIBIT D"

**Your CUSIP Results are as follows:**

**ANDREW R MCLELLAN (CC 24-10131-MDC [BK] [CASE])**
**American US Government Securities Fund**
Symbol:              GVTFX
CUSIP:               **026300822**
ISIN:                US0263008221
Inception Date:      08/07/2008
Net Assets:          $23,818,193,000.00 as of
                     9/26/2025

**A little about the Fund:**

American U.S. Government Securities Fund seeks high level current income as well as to
preserve your investment by investing in securities that are guaranteed by the U.S.
government. The Fund also invests in securities sponsored by the U.S. government. All
securities held by the fund will be rated AAA/AA.

Admin Notes: There is more than one trust with an interest in this security.



UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

In Re:                                          Chapter 13
      ANDREW ROBERT MCLELLAN
                                                Bankruptcy No. 24-10131-AMC

                   Debtor

ORDER

**AND NOW**, upon consideration of the Motion to Dismiss Case filed by Kenneth E. West, Esq., Standing Trustee, and after notice and hearing, it is hereby **ORDERED** that this case is **DISMISSED** and that any wage orders previously entered are **VACATED**.

**IT IS FURTHER ORDERED** if the case has been confirmed and the Trustee is holding funds, any undisbursed funds held by the Chapter 13 Trustee from payments made on account of the Debtor(s)' plan shall be refunded to the Debtor(s) unless a party in interest files a Motion for Alternative Disbursement within 21 days of the entry of this Order.

Date: May 3, 2024

_____
Honorable Ashely M. Chan
Bankruptcy Judge

# "EXHIBIT E"

**Your CUSIP Results are as follows:**

**ANDREW MCLELLAN (CC 24-12201 [CASE])**
**Franklin Federal Tax-Free Income Fund**
Symbol:                    FKTIX
CUSIP:                     **353519101**

Inception Date:            10/7/1983
Net Assets:                $ 8,030,684,000.00 as of
                           4/5/2025

**A little about the Fund:**

Franklin Federal Tax-Free Income Fund seeks a high level of income exempt from
federal income taxes by investing in investment grade municipal securities whose interest
is free from federal income taxes. The Fund's benchmark is Bloomberg Municipal Bond
Index.



UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re:<br><br>ANDREW ROBERT MCLELLAN<br><br><br>Debtor | Chapter 13<br><br>Bankruptcy No. 24-12201-AMC |

<u>ORDER</u>

**AND NOW**, upon consideration of the Motion to Dismiss Case filed by Kenneth E. West, Esq., Standing Trustee, and after notice and hearing, it is hereby **ORDERED** that this case is **DISMISSED** and that any wage orders previously entered are **VACATED**.

**IT IS FURTHER ORDERED** <u>if</u> the case has been confirmed <u>and</u> the Trustee is holding funds, any undisbursed funds held by the Chapter 13 Trustee from payments made on account of the Debtor(s)' plan shall be refunded to the Debtor(s) unless a party in interest files a Motion for Alternative Disbursement within 21 days of the entry of this Order.

**Date: October 8, 2024**

_____
Honorable Chief Judge Ashely M. Chan
Bankruptcy Judge

# "EXHIBIT F"

## Your CUSIP Results are as follows:

**ANDREW MCLELLAN (REG MAIL RA640-339-677US [DRAFT])**
**American US Government Securities Fund**

| | |
|---|---|
| Symbol: | AMUSX |
| CUSIP: | **026300103** |
| ISIN: | US0263001036 |
| Inception Date: | 10/17/1985 |
| Net Assets: | $22,275,167,000.00 as of 4/5/2025 |

### A little about the Fund:

American U.S. Government Securities Fund seeks high level current income as well as to preserve your investment by investing in securities that are guaranteed by the U.S. government. The Fund also invests in securities sponsored by the U.S. government. All securities held by the fund will be rated AAA/Aaa.



# MEMORANDUM

The drawee(s), [United States Bankruptcy Court] and its' bank is only obligated to pay the draft if it has been delivered specified documents, sufficient funds-stock certificated security proceeds of the drawer's federal agency account and if the draft is properly presented.

*Pennsylvania Title 13, Chapter 41, Section 4104, Definitions and index of definitions. "Documentary draft." A draft to be presented for acceptance or payment if specified documents, certificated securities (section 8102) or instructions for uncertificated securities (section 8102) or other certificates, statements or the like are to be received by the drawee or other payer before acceptance or payment of draft (is to be made to the named person or bearer).*

Under this same section, "Draft." A draft as defined in section 3104 (relating to negotiable instrument) or an item, other than an instrument, that is an ORDER (therefore, a draft is written payable to bearer or named person).

*Pursuant to section 4102, if there is a conflict, Division 3 is governed by Division 4, for which Division 4 is governed by Division 8.* And NO WRIT OF POSSESSION shall issue against said Owner, Tenant and or Occupant, unless permitted by applicable law, notwithstanding anything herein to the contrary, this final payment shall not affect the rights of any "person" protected by the right of redemption given the United States under 28 USC § 2410.

Case NO.: _24 - 12201_

UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

# BANKRUPTCY PAYMENT PLAN

In accordance with is presented under authority of Public Resolution HJR 192 of 5 June 1933, now Public Law 73-10, UCC § 3-419, UCC § 3-104(c), and Registered Adjustment of Account; Trustee/Bailor/Secured Party-Creditor on behalf of the Estate hereby issue Letter of Advice and Bill Of Exchange for the following accounts for Full Discharge, Settlement, and Restoration of the Record.

Each Bill Of Exchange listed value totals; declared account payment in full (listed below), 1 additional monthly payment to cover daily pro rata expenses (where applies), 10% processing/servicing fee for The Office of the Trustee, and 10% processing/servicing fee for The Eastern District of Pennsylvania, United States Bankruptcy Court. Copies of the B.O.E. have been attached to this Payment Plan. As Fiscal Agent for The United States of America, B.O.E. originals have been delivered directly to the Judge's Chambers, guaranteeing Safe Passage to The United States Treasury.

## BOE #1

1. Navy Federal Credit Union – Account #8029225409 – $2,471,404.00
2. Navy Federal Credit Union – Account #8032656863 – $496,801.00

   Total $2,968,205,00 + $296,820.50 + $296820.50 = **$3,561,846.00**

## BOE #2

1. Huntington Bank – Account #20-200062643430 – $25,000.00
2. Internal Revenue Service – Account # *****0710 – $250,000.00
3. Amelia Investors – $376,265.00
4. Deni Carise – $585,499.00
5. Capital One – Account # ???????? – $2,500.00
6. PECO – Account #9026529000 – $12,034.00
7. PECO – Account #3815114000 – $2,665.00

   Total $602,698.00 + $60,270.00 + $60,270.00 = **$723,238.00**

Date: 06/26/2024

/s/ _____, McLellan, Andrew
Trustee/Bailor/Secured Party - Creditor
All Rights Reserved, Without Prejudice and Without Recourse

# LETTER OF ADVICE

## NOT SUBJECT TO NEGOTIABILITY- ACCEPTED FOR VALUE

**In Re:** Estate of McLellan - Orphans' Court – Chester County, PA           **Date: June 26th, 2024**

**Attn: NAVY FEDERAL CREDIT UNION,**                 McLellan, Andrew, Trustee/Bailor
Fiduciary Trustee, Bailee                                              c/o PA Debtor Index File # ***~**~▇
820 Follin Lane SE, Vienna, Virginia U.S.A. 22180           **LOAN # 8029225409 and 8032656863**
Assigned to: **Dietrich Kuhlman, Fiduciary TTEE**          **4159 Whitehorse Road - Pennsylvania-19355**

**Re: NOTICE- Processing of Bill of Exchange (BOE-Time Draft)**

**The Fiduciary Trustee, NAVY FEDERAL CREDIT UNION, is in receipt of the (BOE-TD) for processing of which will satisfy the entire current amount stated on purported claims/BK payment plan agreement herein Accepted for Value. This Negotiable Instrument is presented under authority of Public Law 73-10, UCC § 3-419, UCC § 3-104(c),** *Spencer* **v** *Sterling Bank,* **63 Cal App.** *4th* **1055 (1998),** *Guaranty Trust Co of New York v Henwood et al.* **59 S. Ct 847,** **and** *Witkin Negotiable Instruments,* **Vol 3 (2001 Supplement) on the undersigned's UCC Contract Trust Account. The following are the steps required to settle this account. This is not a Treasury/ Bond Account. Any fiscal agent or District Court of the United States may accept this BOE-TD for safe passage to the Treasury.**

1. The enclosed Negotiable Instrument is hereby presented, and the following process *must be followed to the letter,* to satisfy the claimed amount due on this account and discharge of this debt; and
2. Payment may only be accessed with any approval through the account of **NAVY FEDERAL CREDIT UNION** and directly to the Secretary of the Treasury. The Negotiable Instrument must be presented by Claimants'/Bailee's financial institution via Certified or Registered mail directly to the Secretary of the Treasury-Department of the Treasury Bank (Federal Window), 1500 Pennsylvania Avenue, NW, Washington, District of Columbia 20220, Attn: Janet Yellen; and
3. The item processor at Claimant's financial institution, with full identification and BAILEE (Authorized Agent) signature, is to present the **original** Negotiable Instrument along with the Instruction Notice (LOA) and the stamped claim to the Secretary of the Treasury-Department of the Treasury Bank at the above address; and
4. Claimant's financial institution is to retain copies of the document and request a copy of the Return Receipt from the Federal Window be supplied to them noting the date of the **original** Negotiable Instrument was received at the Federal Window in accordance with Public and Banking Policy; and
5. The **copy** of the Negotiable Instrument is to be held at the financial institution until the required period until the full-face amount of the Negotiable Instrument is automatically released by the local commercial pass-through financial institution for credit to Claimants'/Bailees' accounts and discharge and lodge an entry of satisfaction onto Chester County, Pennsylvania of all said claims; and
6. If the Secretary of the Treasury (Drawee) sends a Notice, in writing of some error(s) or problem(s), please notify the undersigned Trustee/Bailor immediately upon receipt of such Notice and the matter will be addressed with the Department of the Treasury Banks' federal window. You will be notified of the corrective action taken, if any.

Thank you for your cooperation in getting this tax matter settled and entry of satisfaction recorded.

/s/ _Carl R. M'Lll_ , McLellan, Andrew
Trustee/Bailor/Secured Party - Creditor

$ 3,561,846.00                                    $3,561,846.00

## BILL OF EXCHANGE
Bill of Acceptance - Time Draft

McLellan, Andrew, Trustee/Bailor/Secured Party - Creditor          Date: June 26TH, 2024
c/o PA Debtor Index File # ***~**~█████
4159 Whitehorse Road
PENNSYLVANIA U.S.A. [19355]

To:     Secretary of the Treasury, Department of the Treasury Bank- Ledger # 00000518

        On or by JULY 12th, 2024, Credit the account of the fiduciary/fiscal agent, **NAVY FEDERAL CREDIT UNION.**,
        as Bailee for LOAN # 8029225409 & 8032656863

**(THREE MILLION, FIVE HUNDRED SIXTY-ONE THOUSAND, EIGHT HUNDRED AND FORTY-SIXTY DOLLARS AND
ZERO CENTS) U.S. Notes**

Personal Direct Treasury (UCC Contract) Trust Account # RA- 640 339 677 US

The obligation of the Drawee (acceptor), Secretary of the Treasury, through the Bailee (authorized fiduciary agent for
the Commonwealth of Pennsylvania) of Claimant's financial institution, hereof arises out of the want of consideration
for the pledge and by the redemption of the pledge under Pubic Resolution HJR 192 of 5 June 1933, now Public Law
73-10, UCC § 3-419, UCC § 3-l04(c), *Spencer v Sterling Bank*, 63 Cal App. 4th l055 (1998), *Guaranty Trust Co of New
York v Henwood et al.* 59 S. Ct 847, and *Witkin Negotiable Instruments*, Vol 3 (2001 Supplement) on the
undersigned's UCC Contract Trust Account, represented by the attached Claim/payment plan agreement
Accepted for Value and bearing the account number # 8029225409 & 8032656863.

This Claim document is hereby surrendered to Claimant as said pledge is redeemed and (discharged) by the drawer
through the attached document of Acceptance for Value and Exempt from Levy. The Claimant's financial institution is
to accept this bill, sign and present it directly via Certified or Registered mail, Return Receipt to the Secretary of the
Treasury-Department of the Treasury. Unless the original Negotiable Instrument is dishonored in writing within **(15)**
days of receipt by the Secretary of the Treasury, Claimant's financial institution is to release the credit to the payee
within the time stipulated pursuant to **Regulation "Z"**, *Truth In Lending Act* or on the date designated, whichever is
later. The amount of this Accepted Draft is to be credited by Claimant's financial institution to the designated account
and discharge of this claim fifteen **(15)** days after receipt by the Federal Window **(Regulation Z)**.

**NOTICE:** The law relating to Principal and Agent applies and those between Bailor and Bailee. The Fiduciary Trustee
below is authorized to execute legal documents pertaining to fiduciary matters before **Chester County** and
authorized to receive and collect any sums due or owing to the trust or the estate held by the named person above
and enter satisfaction in any Court of Record in **Chester County, Pennsylvania** or any other County elsewhere.

By: _____
     **Bailee's** signature (authorized agent)
     Accepted at **(United States Bankruptcy Court)**
     601 Market Street, Pennsylvania 19106
     **ATTN: Amy-Chan**, Fiduciary TTEE
     Authorized by the United States of America, Secretary of Treasury

Ashley M.
A.M. 6/27/24      /s/ _____ , **Trustee/Bailor/Secured Party - Creditor**
                  Without Recourse, All Rights Reserved

Document Copies...filed with the DTB and Clerk of Court-Orphans' Court.

$ 3,561,846.00                                    $3,561,846.00

1

SATISFACTION OF MORTGAGE & HELOC - Case No._____

9/8/24, 4:47 PM
USPS.com® - USPS Tracking® Results

# USPS Tracking®

FAQs >

**Remove** ✕

Tracking Number:

## RA640339677US

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item was delivered to the front desk, reception area, or mail room at 2:13 pm on July 3, 2024 in
PHILADELPHIA, PA 19107.

## Delivered
### Delivered, Front Desk/Reception/Mail Room

PHILADELPHIA, PA 19107
July 3, 2024, 2:13 pm

**See All Tracking History**

What Do USPS Tracking Statuses Mean? **(https://faq.usps.com/s/article/Where-is-my-package)**

Text & Email Updates                                                         ⌄

Product Information                                                          ⌄

**See Less** ⌃

Track Another Package

Enter tracking or barcode numbers

# Need More Help?

Contact USPS Tracking support for further assistance.

# "EXHIBIT G"

## Your CUSIP Results are as follows:

**ANDREW MCLELLAN (REG MAIL RA640-339-685US [DRAFT])**
**American Funds US Government Securities F1**
Symbol:              UGSFX
CUSIP:               **026300400**
ISIN:                US0263004006
Inception Date:      5/28/2002
Net Assets:          $22,387,200,000.00 as of
                     4/5/2025

### A little about the Fund:

The investment seeks to provide a high level of current income consistent with prudent
investment risk and preservation of capital. The fund invests at least 80% of its assets in
securities that are guaranteed or sponsored by the U.S. government, its agencies and
instrumentalities, including bonds and other debt securities denominated in U.S. dollars,
which may be represented by derivatives. It may also invest in mortgage-backed
securities issued by federal agencies and instrumentalities that are not backed by the full
faith and credit of the U.S. government.



# MEMORANDUM

The drawee(s), **[United States Bankruptcy Court]** and its' bank is only obligated to pay the draft if it has been delivered specified documents, sufficient funds-stock certificated security proceeds of the drawer's federal agency account and if the draft is properly presented.

_**Pennsylvania Title 13, Chapter 41, Section 4104, Definitions and index of definitions. "Documentary draft." A draft to be presented for acceptance or payment if specified documents, certificated securities (section 8102) or instructions for uncertificated securities (section 8102) or other certificates, statements or the like are to be received by the drawee or other payer before acceptance or payment of draft (is to be made to the named person or bearer).**_

Under this same section, "Draft." A draft as defined in section 3104 (relating to negotiable instrument) or an item, other than an instrument, that is an ORDER (therefore, a draft is written payable to bearer or named person).

_Pursuant to section 4102, if there is a conflict, Division 3 is governed by Division 4, for which Division 4 is governed by Division 8._ And NO WRIT OF POSSESSION shall issue against said Owner, Tenant and or Occupant, unless permitted by applicable law, notwithstanding anything herein to the contrary, this final payment shall not affect the rights of any "person" protected by the right of redemption given the United States under 28 USC § 2410.

Case NO.: *24 - 12201*

**UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

# BANKRUPTCY PAYMENT PLAN

In accordance with is presented under authority of Public Resolution HJR 192 of 5 June 1933, now Public Law 73-10, UCC § 3-419, UCC § 3-104(c), and Registered Adjustment of Account; Trustee/Bailor/Secured Party-Creditor on behalf of the Estate hereby issue Letter of Advice and Bill Of Exchange for the following accounts for Full Discharge, Settlement, and Restoration of the Record.

Each Bill Of Exchange listed value totals; declared account payment in full (listed below), 1 additional monthly payment to cover daily pro rata expenses (where applies), 10% processing/servicing fee for The Office of the Trustee, and 10% processing/servicing fee for The Eastern District of Pennsylvania, United States Bankruptcy Court. Copies of the B.O.E. have been attached to this Payment Plan. As Fiscal Agent for The United States of America, B.O.E. originals have been delivered directly to the Judge's Chambers, guaranteeing Safe Passage to The United States Treasury.

# BOE #1

1. Navy Federal Credit Union – Account #8029225409 – $2,471,404.00
2. Navy Federal Credit Union – Account #8032656863 – $496,801.00

   Total $2,968,205.00 + $296,820.50 + $296820.50 = **$3,561,846.00**

# BOE #2

1. Huntington Bank – Account #20-200062643430 – $25,000.00
2. Internal Revenue Service – Account # *****0710 – $250,000.00
3. Amelia Investors – $376,265.00
4. Deni Carise – $585,499.00
5. Capital One – Account # ???????? – $2,500.00
6. PECO – Account #9026529000 – $12,034.00
7. PECO – Account #3815114000 – $2,665.00

   Total $602,698.00 + $60,270.00 + $60,270.00 = **$723,238.00**

Date: 06/26/2024          /s/ _[signature]_ , McLellan, Andrew
Trustee/Bailor/Secured Party - Creditor
All Rights Reserved, Without Prejudice and Without Recourse

## LETTER OF ADVICE

NOT SUBJECT TO NEGOTIABILITY- ACCEPTED FOR VALUE

**In Re:** Estate of McLellan - Orphans' Court – Chester County, PA          **Date: June 26ᵗʰ, 2024**

**Attn: UNITED STATES BANKRUPTCY COURT,**          McLellan, Andrew, Trustee/Bailor
Fiduciary Trustee, **Bailee**                                 c/o PA Debtor Index File # ***~**~
601 Market Street, Pennsylvania U.S.A. 19106          **LOAN # Bankruptcy Payment Plan**
Attn: Amy Chan, Fiduciary TTEE                        4159 Whitehorse Road - Pennsylvania-19355

Re: NOTICE- Processing of Bill of Exchange (BOE-Time Draft)

The Fiduciary Trustee, UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, is in receipt of the (BOE-TD) for processing of which will satisfy the entire current amount stated on purported claims/BK payment plan agreement herein Accepted for Value. This Negotiable Instrument is presented under authority of Public Law 73-10, UCC § 3-419, UCC § 3-104(c), *Spencer* v *Sterling Bank*, 63 Cal App. 4ᵗʰ 1055 (1998), *Guaranty Trust Co of New York* v *Henwood et al.* 59 S. Ct 847, and *Witkin Negotiable Instruments*, Vol 3 (2001 Supplement) on the undersigned's UCC Contract Trust Account. The following are the steps required to settle this account. This is not a Treasury/ Bond Account. Any fiscal agent or District Court of the United States may accept this BOE-TD for safe passage to the Treasury.

1. The enclosed Negotiable Instrument is hereby presented, and the following process *must be followed to the letter,* to satisfy the claimed amount due on this account and discharge of this debt; and

2. Payment may only be accessed with any approval through the account of **UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA** and directly to the Secretary of the Treasury. The Negotiable Instrument must be presented by Claimants'/Bailee's financial institution via Certified or Registered mail directly to the Secretary of the Treasury-Department of the Treasury Bank (Federal Window), 1500 Pennsylvania Avenue, NW, Washington, District of Columbia 20220, Attn: Janet Yellen; and

3. The item processor at Claimant's financial institution, with full identification and BAILEE (Authorized Agent) signature, is to present the **original** Negotiable Instrument along with the Instruction Notice (LOA) and the stamped claim to the Secretary of the Treasury-Department of the Treasury Bank at the above address; and

4. Claimant's financial institution is to retain copies of the document and request a copy of the Return Receipt from the Federal Window be supplied to them noting the date of the **original** Negotiable Instrument was received at the Federal Window in accordance with Public and Banking Policy; and

5. The **copy** of the Negotiable Instrument is to be held at the financial institution until the required period until the full-face amount of the Negotiable Instrument is automatically released by the local commercial pass-through financial institution for credit to Claimants'/Bailees' accounts and discharge and lodge an entry of satisfaction onto Chester County, Pennsylvania of all said claims; and

6. If the Secretary of the Treasury (Drawee) sends a Notice, in writing of some error(s) or problem(s), please notify the undersigned Trustee/Bailor immediately upon receipt of such Notice and the matter will be addressed with the Department of the Treasury Banks' federal window. You will be notified of the corrective action taken, if any.

Thank you for your cooperation in getting this tax matter settled and entry of satisfaction recorded.

/s/ _[signature]_ , McLellan, Andrew
Trustee/Bailor/Secured Party - Creditor

**$ 723,238.00**                                         **$723,238.00**

## BILL OF EXCHANGE
Bill of Acceptance - Time Draft

McLellan, Andrew, Trustee/Bailor/Secured Party - Creditor          Date: June 26TH, 2024
c/o PA Debtor Index File # ***~*~
4159 Whitehorse Road
PENNSYLVANIA U.S.A. [19355]

**To:**     Secretary of the Treasury, Department of the Treasury Bank- Ledger # 00000518

On or by JULY 12th, 2024, Credit the account of the fiduciary/fiscal agent, **U.S. Bankruptcy Court**, as Bailee

**(SEVEN HUNDRED TWENTY-THREE THOUSAND, TWO HUNDRED AND THIRTY-EIGHT DOLLARS AND ZERO CENTS) U.S. Notes**

Personal Direct Treasury (UCC Contract) Trust Account # RA- 640 339 685 US

The obligation of the Drawee (acceptor), Secretary of the Treasury, through the Bailee (authorized fiscal agent for the United States Treasury), hereof arises out of the want of consideration for the pledge and by the redemption of the pledge under Public Resolution HJR 192 of 5 June 1933, now Public Law 73-10, UCC § 3-419, UCC § 3-l04(c), *Spencer v Sterling Bank*, 63 Cal App. 4th l055 (1998), *Guaranty Trust Co of New York v Henwood et al.* 59 S. Ct 847, and *Witkin Negotiable Instruments*, Vol 3 (2001 Supplement) on the undersigned's UCC Contract Trust Account, represented by the attached BK payment plan agreement Accepted for Value and bearing the account numbers herein annexed.

This Claim document is hereby surrendered to fiscal agent, as said pledge is redeemed and (discharged) by the drawer through the attached document of Acceptance for Value and Exempt from Levy. The Fiscal Agents' financial institution is to accept this bill, sign and present it directly via Certified or Registered mail, Return Receipt to the Secretary of the Treasury-Department of the Treasury. Unless the original Negotiable Instrument is dishonored in writing within **(15)** days of receipt by the Secretary of the Treasury, Fiscal Agents' financial institution is to release the credit to the payee within the time stipulated pursuant to Regulation **"Z"**, *Truth In Lending Act* or on the date designated, whichever is later. The amount of this Accepted Draft is to be credited by Fiscal Agents' financial institution to the designated accounts and discharge of all claims fifteen (15) days after receipt by the Federal Window **(Regulation Z)**.

**NOTICE:** The law relating to Principal and Agent applies and those between Bailor and Bailee. The Fiduciary Trustee below is authorized to execute legal documents pertaining to fiduciary matters before **United States Bankruptcy Court** and authorized to receive and collect any sums due or owing to the trust or the estate held by the named person above and enter satisfaction in any Court of Record in Pennsylvania or any other County elsewhere.

**By:** _____
     **Bailee's signature (authorized agent)**
     Accepted at **(United States Bankruptcy Court)**
     601 Market Street, Pennsylvania 19106
     **ATTN: Amy Chan**, Fiduciary TTEE
     Authorized by the United States of America, Secretary of Treasury

Ashley M.
A. M. 6/02/24  /s/ _____, **Trustee/Bailor/Secured Party - Creditor**
                Without Recourse, All Rights Reserved

Document Copies...filed with the DTB and Clerk of Court-Orphans' Court.

**$ 723,238.00**                                         **$723,238.00**

_____

ENTRY OF DEPOSIT for PAYMENT PLAN - Case No._____

9/8/24, 4:46 PM                            USPS.com® - USPS Tracking® Results

# USPS Tracking®

FAQs >

Tracking Number:

**RA640339685US**

Remove X

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item was delivered to the front desk, reception area, or mail room at 2:13 pm on July 3, 2024 in PHILADELPHIA, PA 19107.

## Delivered

**Delivered, Front Desk/Reception/Mail Room**

PHILADELPHIA, PA 19107
July 3, 2024, 2:13 pm

**See All Tracking History**

What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)

Text & Email Updates                                    ⌄

Product Information                                      ⌄

### See Less ⌃

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

# "EXHIBIT H"

**Your CUSIP Results are as follows:**

**ANDREW R MCLELLAN (ACCT [20]-20062643430 [AUTO LOAN] [HUNTINGTON BANK])**
**Franklin High Income Fund**
Symbol:                 FCHIX
CUSIP:                  **353538200**
ISIN:                   US3535382002
Inception Date:         05/16/1995
Net Assets:             $2,859,864,000.00 as of
                        9/24/2025

**A little about the Fund:**

The Franklin High Income Fund seeks a high level of current income, with capital
appreciation to the extent it is possible and consistent with the Funds principal goal. The
Fund invests predominantly in high yield, lower-rated debt securities.

Admin Notes: There is more than one trust with an interest in this security.



The Huntington National Bank
P.O. Box 5065, OPC829
Cleveland, OH 44101



May 22, 2024

꠸ꠞꠞꠞꠞꠞ
Andrew Mclellan
4159 WHITE HORSE RD
MALVERN, PA  19355-9650

Installment Loan Number: 20 20062643430

Due Date: Your payments are due on the 13 day of each month

Dear Andrew Mclellan,

**YOUR PAYMENT IS PAST DUE**

We're writing to let you know that we have not received payment on your Huntington installment loan referenced above. Your account is approximately 45 days past due in the amount of $3,702.84 (not including amounts that become due after the date of this notice).

Your loan agreement requires regular monthly payments due on or before your due date (listed above). This is your notice that your payment is due within 14 days from the date of this letter. If we don't receive payment within 14 days, please note that we may exercise our rights under the law, which includes the repossession of the vehicle financed by you with Huntington.

As you know, Huntington has a lien on your vehicle and if you default on your loan, Huntington has the right to repossess the vehicle. This loan will be reviewed for repossession at 65 days past due, but Huntington reserves its right under the law to repossess it earlier if circumstances warrant such action.

We want to help you avoid repossession and any additional costs that will be assessed to your loan, so please submit your payment to us at the following address: The Huntington National Bank, P.O. Box 1558, GW4W122, Attn: Payment Processing, Columbus, Ohio 43218. If you are unable to bring your account current, please call us at (877) 477-6855, Monday through Thursday, 8:00 a.m. to 11:00 p.m. ET, Friday, 8:00 a.m. to 9:00 p.m. ET, and Saturdays, 8:00 a.m. to 1:00 p.m. ET, to discuss possible solutions for bringing your account current.

Sincerely,

Customer Assistance

For customers in Connecticut, District of Columbia, North Carolina or Vermont: This is an attempt to collect a debt. Any information obtained will be used for that purpose.

NOTICE: The acceptance by us of these or other late payments does NOT waive our right to repossess or take other appropriate action, WITHOUT NOTICE, if you do not make future payments on time. YOU ARE REQUIRED TO MAKE ALL PAYMENTS ON TIME.

Member FDIC. ⌐⌐® and Huntington® are federally registered service marks of Huntington Bancshares Incorporated.

32170 C16611.33 8/22

# "EXHIBIT I"

**Form 2848**
(Rev. January 2021)
Department of the Treasury
Internal Revenue Service

# Power of Attorney
# and Declaration of Representative

▶ Go to *www.irs.gov/Form2848* for instructions and the latest information.

OMB No. 1545-0150

**For IRS Use Only**
Received by:
Name _____
Telephone _____
Function _____
Date ___ / ___ / ___

**Part I**  Power of Attorney

Caution: A separate Form 2848 must be completed for each taxpayer. Form 2848 will not be honored for any purpose other than representation before the IRS.

**1  Taxpayer information.** Taxpayer must sign and date this form on page 2, line 7.

| Taxpayer name and address | Taxpayer identification number(s): (Master Trust File No.: 1005360-1976) |
|---|---|
| ANDREW ROBERT MCLELLAN (Master Trust File No.: 1005360-1976) | 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        196560710        19-6560710 |
| | Daytime telephone number        Plan number (if applicable) |
| | 2158347321 |

hereby appoints the following representative(s) as attorney(s)-in-fact:

**2  Representative(s)** must sign and date this form on page 2, Part II.

| Name and address | |
|---|---|
| McLellan, Andrew Robert (Executor) | CAF No. _____ |
| 4159 White Horse Road | PTIN _____ |
| Malvern, PA 19355 | Telephone No. _____ |
| | Fax No. _____ |
| Check if to be sent copies of notices and communications ☑ | Check if new: Address ☐   Telephone No. ☐   Fax No. ☐ |

| Name and address | |
|---|---|
| | CAF No. _____ |
| | PTIN _____ |
| | Telephone No. _____ |
| | Fax No. _____ |
| Check if to be sent copies of notices and communications ☐ | Check if new: Address ☐   Telephone No. ☐   Fax No. ☐ |

| Name and address | |
|---|---|
| INTERNAL REVENUE SERVICE | CAF No. _____ |
| W&I FIELD ASSISTANCE | PTIN _____ |
| PHILADELPHIA | Telephone No. _____ |
| | Fax No. _____ |
| (Note: IRS sends notices and communications to only two representatives.) | Check if new: Address ☐   Telephone No. ☐   Fax No. ☐ |

NOV 1 8 2025
RECEIVED
141002

| Name and address | |
|---|---|
| | CAF No. _____ |
| | PTIN _____ |
| | Telephone No. _____ |
| | Fax No. _____ |
| (Note: IRS sends notices and communications to only two representatives.) | Check if new: Address ☐   Telephone No. ☐   Fax No. ☐ |

to represent the taxpayer before the Internal Revenue Service and perform the following acts:

**3  Acts authorized (you are required to complete line 3).** Except for the acts described in line 5b, I authorize my representative(s) to receive and inspect my confidential tax information and to perform acts I can perform with respect to the tax matters described below. For example, my representative(s) shall have the authority to sign any agreements, consents, or similar documents (see instructions for line 5a for authorizing a representative to sign a return).

| Description of Matter (Income, Employment, Payroll, Excise, Estate, Gift, Whistleblower, Practitioner Discipline, PLR, FOIA, Civil Penalty, Sec. 4980H Shared Responsibility Payment, etc.) (see instructions) | Tax Form Number (1040, 941, 720, etc.) (if applicable) | Year(s) or Period(s) (if applicable) (see instructions) |
|---|---|---|
| To administer and execute any and all actions as necessary to perform fiduciary duties for the above listed trust and trust acct nos. | Any and all forms as so needed to execute trust account affairs | unlimited |
| including procuring all accounting to prove debts and assets/credits (securities, bonds, but not limited to) created by the inducement of | | |
| the above referenced acct nos. held in custodianship of entites on behalf of the sole entitled beneficial owner, andrew robert mclellan. | | |

**4  Specific use not recorded on the Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. See *Line 4. Specific Use Not Recorded on CAF* in the instructions . . . . . . . . . . . . . . . ▶ ☐

**5a  Additional acts authorized.** In addition to the acts listed on line 3 above, I authorize my representative(s) to perform the following acts (see instructions for line 5a for more information): ☑ Access my IRS records via an Intermediate Service Provider;
☑ Authorize disclosure to third parties;   ☑ Substitute or add representative(s);   ☑ Sign a return;   Revoke and revest interim/acting trustees sitting over agreements (trusts, instruments, contracts, but not limited to). Initiate audits throught the IRS and US Treasury for any account in which the above referenced trust accounts were induced by others to create credit and or collateral.

☑ Other acts authorized:  Initiate claims on behalf of the beneficiary to the ownership of assets (securities, bonds, but not limited to) created by the inducement of the above referenced trust and trust acct. nos. Transfer of assets. Settle fully accounted for debts.

For Privacy Act and Paperwork Reduction Act Notice, see the instructions.        Cat. No. 11980J        Form **2848** (Rev. 1-2021)

Form 2848 (Rev. 1-2021)                                                                                                                    Page **2**

   **b**  **Specific acts not authorized.** My representative(s) is (are) not authorized to endorse or otherwise negotiate any check (including directing or accepting payment by any means, electronic or otherwise, into an account owned or controlled by the representative(s) or any firm or other entity with whom the representative(s) is (are) associated) issued by the government in respect of a federal tax liability.

      List any other specific deletions to the acts otherwise authorized in this power of attorney (see instructions for line 5b): **No acts by the sole authorized representative (McLellan, Andrew Robert) are restricted.**

  **6**  **Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same matters and years or periods covered by this form. If you **do not** want to revoke a prior power of attorney, check here . . . . . . . . . . . . . . . . . . . . . . . ▶ ☑

      **YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

  **7**  **Taxpayer declaration and signature.** If a tax matter concerns a year in which a joint return was filed, each spouse must file a separate power of attorney even if they are appointing the same representative(s). If signed by a corporate officer, partner, guardian, tax matters partner, partnership representative (or designated individual, if applicable), executor, receiver, administrator, trustee, or individual other than the taxpayer, I certify I have the legal authority to execute this form on behalf of the taxpayer.

      ▶ **IF NOT COMPLETED, SIGNED, AND DATED, THE IRS WILL RETURN THIS POWER OF ATTORNEY TO THE TAXPAYER.**

| *[signature]* | 11/17/2025 | Executor |
|---|---|---|
| Signature | Date | Title (if applicable) |
| McLellan, Andrew Robert | ANDREW ROBERT MCLELLAN (Master Trust File No.: 1005360-1976) | |
| Print name | Print name of taxpayer from line 1 if other than individual | |

<hr/>

**Part II**  **Declaration of Representative**

Under penalties of perjury, by my signature below I declare that:

• I am not currently suspended or disbarred from practice, or ineligible for practice, before the Internal Revenue Service;

• I am subject to regulations in Circular 230 (31 CFR, Subtitle A, Part 10), as amended, governing practice before the Internal Revenue Service;

• I am authorized to represent the taxpayer identified in Part I for the matter(s) specified there; and

• I am one of the following:

  **a**  Attorney—a member in good standing of the bar of the highest court of the jurisdiction shown below.

  **b**  Certified Public Accountant—a holder of an active license to practice as a certified public accountant in the jurisdiction shown below.

  **c**  Enrolled Agent—enrolled as an agent by the IRS per the requirements of Circular 230.

  **d**  Officer—a bona fide officer of the taxpayer organization.

  **e**  Full-Time Employee—a full-time employee of the taxpayer.

  **f**  Family Member—a member of the taxpayer's immediate family (spouse, parent, child, grandparent, grandchild, step-parent, step-child, brother, or sister).

  **g**  Enrolled Actuary—enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the IRS is limited by section 10.3(d) of Circular 230).

  **h**  Unenrolled Return Preparer—Authority to practice before the IRS is limited. An unenrolled return preparer may represent, provided the preparer (1) prepared and signed the return or claim for refund (or prepared if there is no signature space on the form); (2) was eligible to sign the return or claim for refund; (3) has a valid PTIN; and (4) possesses the required Annual Filing Season Program Record of Completion(s). **See Special Rules and Requirements for Unenrolled Return Preparers** *in the instructions for additional information.*

  **k**  Qualifying Student or Law Graduate—receives permission to represent taxpayers before the IRS by virtue of his/her status as a law, business, or accounting student, or law graduate working in a LITC or STCP. See instructions for Part II for additional information and requirements.

  **r**  Enrolled Retirement Plan Agent—enrolled as a retirement plan agent under the requirements of Circular 230 (the authority to practice before the Internal Revenue Service is limited by section 10.3(e)).

      ▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT COMPLETED, SIGNED, AND DATED, THE IRS WILL RETURN THE POWER OF ATTORNEY. REPRESENTATIVES MUST SIGN IN THE ORDER LISTED IN PART I, LINE 2.**

**Note:** For designations d–f, enter your title, position, or relationship to the taxpayer in the "Licensing jurisdiction" column.

| Designation— Insert above letter (a–r). | Licensing jurisdiction (State) or other licensing authority (if applicable) | Bar, license, certification, registration, or enrollment number (if applicable) | Signature | Date |
|---|---|---|---|---|
| f | N/A | N/A | | 11/17/2025 |
| | | | | |
| | | | | |
| | | | | |

Form **2848** (Rev. 1-2021)

"EXHIBIT J"

☐ **CORRECTED** (if checked)

| LENDER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.<br>Andrew Robert McLellan<br>4159 White Horse Road<br>Malvern PA 19355<br>US - Phone: 2158347321 | | OMB No. 1545-0877<br>Form **1099-A**<br>(Rev. April 2025)<br><br>For calendar year<br>2025 | **Acquisition or Abandonment of Secured Property** |
|---|---|---|---|
| **LENDER'S TIN**<br>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 | **BORROWER'S TIN**<br>XX-XXX6705 | 1 Date of lender's acquisition or knowledge of abandonment<br>01/25/2018 | 2 Balance of principal outstanding<br>$2000000.00 | **Copy B**<br>**For Borrower** |
| BORROWER'S name,Street address (including apt. no.),City or town, state or province, country, and ZIP or foreign postal code<br>Navy Federal Credit Union<br>820 Follin Lane SE<br>Vienna VA 22180<br>US | | 4 Fair market value of property<br>$872365796.00 | This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported |
| | | 5 If checked, the borrower was personally liable for repayment of the debt . . . . . . . . . ▶ ☑ | |
| Account number (see instructions)<br>8029225409 | | 6 Description of property<br>CUSIP: 872365796. Audit Debtor. | |

Form **1099-A** (Rev. 4-2025)          www.tax1099.com – IRS Approved e File Provider          www.irs.gov/Form1099A

**Instructions for Borrower**

Certain lenders who acquire an interest in property that was security for a loan or who have reason to know that such property has been abandoned must provide you with this statement. You may have reportable income or loss because of such acquisition or abandonment. Gain or loss from an acquisition is generally measured by the difference between your adjusted basis in the property and the amount of your debt canceled in exchange for the property or, if greater, the sale proceeds. If you abandoned the property, you may have income from the discharge of indebtedness in the amount of the unpaid balance of your canceled debt. The tax consequences of abandoning property depend on whether or not you were personally liable for the debt. Losses on acquisitions or abandonments of property held for personal use are not deductible. See Pub. 4681 for information about your tax consequences. Property means any real property (such as a personal residence), any intangible property, and tangible personal property that is held for investment or used in a trade or business.

If you borrowed money on this property with someone else, each of you should receive this statement.

**Borrower's taxpayer identification number (TIN).** For your protection, this form may show only the last four digits of your TIN (social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN)). However, the issuer has reported your complete TIN to the IRS.

**Account number.** May show an account or other unique number the lender assigned to distinguish your account.

**Box 1.** For a lender's acquisition of property that was security for a loan, the date shown is generally the earlier of the date title was transferred to the lender

or the date possession and the burdens and benefits of ownership were transferred to the lender. This may be the date of a foreclosure or execution sale or the date your right of redemption or objection expired. For an abandonment, the date shown is the date on which the lender first knew or had reason to know that the property was abandoned or the date of a foreclosure, execution, or similar sale.

**Box 2.** Shows the debt (principal only) owed to the lender on the loan when the interest in the property was acquired by the lender or on the date the lender first knew or had reason to know that the property was abandoned. Box 3. Reserved for future use.

**Box 3.** Reserved for future use.

**Box 4.** Shows the fair market value of the property. If the amount in box 4 is less than the amount in box 2, and your debt is canceled, you may have cancellation of debt income. If the property was your main home, see Pub. 523 to figure any taxable gain or ordinary income.

**Box 5.** Shows whether you were personally liable for repayment of the debt when the debt was created or, if modified, when it was last modified.

**Box 6.** Shows the description of the property acquired by the lender or abandoned by you. If "CCC" is shown, the form indicates the amount of any Commodity Credit Corporation loan outstanding when you forfeited your commodity.

**Future developments.** SFor the latest information about developments related to Form 1099-A and its instructions, such as legislation enacted after they were published, go to www.irs.gov/Form1099A.

**Free File Program.** Go to www.irs.gov/FreeFile to see if you qualify for no-cost online federal tax preparation, e-filing, and direct deposit or payment options.

□ **CORRECTED** (if checked)

| LENDER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.<br>Andrew Robert McLellan<br>4159 White Horse Road<br>Malvern PA 19355<br>US - Phone: 2158347321 | | OMB No. 1545-0877<br>Form **1099-A**<br>(Rev. April 2025)<br><br>For calendar year<br>2025 | **Acquisition or Abandonment of Secured Property** |
|---|---|---|---|
| | | 1 Date of lender's acquisition or knowledge of abandonment<br>07/06/2019 | 2 Balance of principal outstanding<br>$400000.00 | **Copy B**<br>**For Borrower** |
| LENDER'S TIN<br>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 | BORROWER'S TIN<br>XX-XXX6705 | | |
| BORROWER'S name, Street address (including apt. no.), City or town, state or province, country, and ZIP or foreign postal code<br>Navy Federal Credit Union<br>820 Follin Lane SE<br>Vienna VA 22180<br>US | | 4 Fair market value of property<br>$922031208.00 | This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported |
| | | 5 If checked, the borrower was personally liable for repayment of the debt . . . . . . . . . ▶ ☑ | |
| | | 6 Description of property<br>CUSIP: 922031208. Audit Debtor. | |
| Account number (see instructions)<br>8032656863 | | | |

Form **1099-A** (Rev. 4-2025)    www.tax1099.com - IRS Approved e-File Provider    www.irs.gov/Form1099A

**Instructions for Borrower**

Certain lenders who acquire an interest in property that was security for a loan or who have reason to know that such property has been abandoned must provide you with this statement. You may have reportable income or loss because of such acquisition or abandonment. Gain or loss from an acquisition is generally measured by the difference between your adjusted basis in the property and the amount of your debt canceled in exchange for the property or, if greater, the sale proceeds. If you abandoned the property, you may have income from the discharge of indebtedness in the amount of the unpaid balance of your canceled debt. The tax consequences of abandoning property depend on whether or not you were personally liable for the debt. Losses on acquisitions or abandonments of property held for personal use are not deductible. See Pub. 4681 for information about your tax consequences. Property means any real property (such as a personal residence), any intangible property, and tangible personal property that is held for investment or used in a trade or business.

If you borrowed money on this property with someone else, each of you should receive this statement.

**Borrower's taxpayer identification number (TIN).** For your protection, this form may show only the last four digits of your TIN (social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN)). However, the issuer has reported your complete TIN to the IRS.

**Account number.** May show an account or other unique number the lender assigned to distinguish your account.

**Box 1.** For a lender's acquisition of property that was security for a loan, the date shown is generally the earlier of the date title was transferred to the lender or the date possession and the burdens and benefits of ownership were transferred to the lender. This may be the date of a foreclosure or execution sale or the date your right of redemption or objection expired. For an abandonment, the date shown is the date on which the lender first knew or had reason to know that the property was abandoned or the date of a foreclosure, execution, or similar sale.

**Box 2.** Shows the debt (principal only) owed to the lender on the loan when the interest in the property was acquired by the lender or on the date the lender first knew or had reason to know that the property was abandoned. Box 3. Reserved for future use.

**Box 3.** Reserved for future use.

**Box 4.** Shows the fair market value of the property. If the amount in box 4 is less than the amount in box 2, and your debt is canceled, you may have cancellation of debt income. If the property was your main home, see Pub. 523 to figure any taxable gain or ordinary income.

**Box 5.** Shows whether you were personally liable for repayment of the debt when the debt was created or, if modified, when it was last modified.

**Box 6.** Shows the description of the property acquired by the lender or abandoned by you. If "CCC" is shown, the form indicates the amount of any Commodity Credit Corporation loan outstanding when you forfeited your commodity.

**Future developments.** SFor the latest information about developments related to Form 1099-A and its instructions, such as legislation enacted after they were published, go to www.irs.gov/Form1099A.

**Free File Program.** Go to www.irs.gov/FreeFile to see if you qualify for no-cost online federal tax preparation, e-filing, and direct deposit or payment options.

□ **CORRECTED** (if checked)

| LENDER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no. | | OMB No. 1545-0877 | **Acquisition or Abandonment of Secured Property** |
|---|---|---|---|

Andrew Robert McLellan
4159 White Horse Road
Malvern PA 19355
US - Phone: 2158347321

Form **1099-A** (Rev. April 2025)

For calendar year 2025

| LENDER'S TIN | BORROWER'S TIN |
|---|---|
| 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 | XX-XXX6705 |

1 Date of lender's acquisition or knowledge of abandonment 10/09/2024

2 Balance of principal outstanding $3455424.00

**Copy B**
For Borrower

BORROWER'S name, Street address (including apt. no.), City or town, state or province, country, and ZIP or foreign postal code
Navy Federal Credit Union
820 Follin Lane SE
Vienna VA 22180
US

4 Fair market value of property $25081845.00

5 If checked, the borrower was personally liable for repayment of the debt . . . . . . . . . ▶ ☑

6 Description of property
CUSIP: 025081845. Audit Debtor.

This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported

Account number (see instructions)
RA620710765US

Form **1099-A** (Rev. 4-2025)          www.tax1099.com - IRS Approved e File Provider          www.irs.gov/Form1099A

**Instructions for Borrower**

Certain lenders who acquire an interest in property that was security for a loan or who have reason to know that such property has been abandoned must provide you with this statement. You may have reportable income or loss because of such acquisition or abandonment. Gain or loss from an acquisition is generally measured by the difference between your adjusted basis in the property and the amount of your debt canceled in exchange for the property or, if greater, the sale proceeds. If you abandoned the property, you may have income from the discharge of indebtedness in the amount of the unpaid balance of your canceled debt. The tax consequences of abandoning property depend on whether or not you were personally liable for the debt. Losses on acquisitions or abandonments of property held for personal use are not deductible. See Pub. 4681 for information about your tax consequences. Property means any real property (such as a personal residence), any intangible property, and tangible personal property that is held for investment or used in a trade or business.

If you borrowed money on this property with someone else, each of you should receive this statement.

**Borrower's taxpayer identification number (TIN).** For your protection, this form may show only the last four digits of your TIN (social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN)). However, the issuer has reported your complete TIN to the IRS.

**Account number.** May show an account or other unique number the lender assigned to distinguish your account.

**Box 1.** For a lender's acquisition of property that was security for a loan, the date shown is generally the earlier of the date title was transferred to the lender

or the date possession and the burdens and benefits of ownership were transferred to the lender. This may be the date of a foreclosure or execution sale or the date your right of redemption or objection expired. For an abandonment, the date shown is the date on which the lender first knew or had reason to know that the property was abandoned or the date of a foreclosure, execution, or similar sale.

**Box 2.** Shows the debt (principal only) owed to the lender on the loan when the interest in the property was acquired by the lender or on the date the lender first knew or had reason to know that the property was abandoned. Box 3. Reserved for future use.

**Box 3.** Reserved for future use.

**Box 4.** Shows the fair market value of the property. If the amount in box 4 is less than the amount in box 2, and your debt is canceled, you may have cancellation of debt income. If the property was your main home, see Pub. 523 to figure any taxable gain or ordinary income.

**Box 5.** Shows whether you were personally liable for repayment of the debt when the debt was created or, if modified, when it was last modified.

**Box 6.** Shows the description of the property acquired by the lender or abandoned by you. If "CCC" is shown, the form indicates the amount of any Commodity Credit Corporation loan outstanding when you forfeited your commodity.

**Future developments.** SFor the latest information about developments related to Form 1099-A and its instructions, such as legislation enacted after they were published, go to www.irs.gov/Form1099A.

**Free File Program.** Go to www.irs.gov/FreeFile to see if you qualify for no-cost online federal tax preparation, e-filing, and direct deposit or payment options.

☐ **CORRECTED** (if checked)

| LENDER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.<br>Andrew Robert McLellan<br>4159 White Horse Road<br>Malvern PA 19355<br>US - Phone: 2158347321 | OMB No. 1545-0877<br>Form **1099-A**<br>(Rev. April 2025)<br><br>For calendar year<br>2025 | **Acquisition or Abandonment of Secured Property** |
|---|---|---|

| LENDER'S TIN<br>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 | BORROWER'S TIN | 1 Date of lender's acquisition or knowledge of abandonment<br>06/03/2024 | 2 Balance of principal outstanding<br>$26300822.00 | **Copy B**<br>**For Borrower** |
|---|---|---|---|---|

| BORROWER'S name, Street address (including apt. no.), City or town, state or province, country, and ZIP or foreign postal code<br>US Bankruptcy Court Eastern District PA<br>Clerk of Courts<br>ROBERT N.C. NIX, SR. FEDERAL BUILDING<br>Suite 400<br>Philadelphia PA 19107<br>US | 4 Fair market value of property<br>$26300822.00 | This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported |
|---|---|---|

5 If checked, the borrower was personally liable for repayment of the debt . . . . . . . . . . ▶ ☑

6 Description of property
CUSIP: 026300822. Audit Debtor.

Account number (see instructions)
2410131AMC

Form **1099-A** (Rev. 4-2025)          www.tax1099.com - IRS Approved e File Provider          www.irs.gov/Form1099A

**Instructions for Borrower**

Certain lenders who acquire an interest in property that was security for a loan or who have reason to know that such property has been abandoned must provide you with this statement. You may have reportable income or loss because of such acquisition or abandonment. Gain or loss from an acquisition is generally measured by the difference between your adjusted basis in the property and the amount of your debt canceled in exchange for the property or, if greater, the sale proceeds. If you abandoned the property, you may have income from the discharge of indebtedness in the amount of the unpaid balance of your canceled debt. The tax consequences of abandoning property depend on whether or not you were personally liable for the debt. Losses on acquisitions or abandonments of property held for personal use are not deductible. See Pub. 4681 for information about your tax consequences. Property means any real property (such as a personal residence), any intangible property, and tangible personal property that is held for investment or used in a trade or business.

If you borrowed money on this property with someone else, each of you should receive this statement.

**Borrower's taxpayer identification number (TIN).** For your protection, this form may show only the last four digits of your TIN (social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN)). However, the issuer has reported your complete TIN to the IRS.

**Account number.** May show an account or other unique number the lender assigned to distinguish your account.

**Box 1.** For a lender's acquisition of property that was security for a loan, the date shown is generally the earlier of the date title was transferred to the lender

or the date possession and the burdens and benefits of ownership were transferred to the lender. This may be the date of a foreclosure or execution sale or the date your right of redemption or objection expired. For an abandonment, the date shown is the date on which the lender first knew or had reason to know that the property was abandoned or the date of a foreclosure, execution, or similar sale.

**Box 2.** Shows the debt (principal only) owed to the lender on the loan when the interest in the property was acquired by the lender or on the date the lender first knew or had reason to know that the property was abandoned. Box 3. Reserved for future use.

**Box 3.** Reserved for future use.

**Box 4.** Shows the fair market value of the property. If the amount in box 4 is less than the amount in box 2, and your debt is canceled, you may have cancellation of debt income. If the property was your main home, see Pub. 523 to figure any taxable gain or ordinary income.

**Box 5.** Shows whether you were personally liable for repayment of the debt when the debt was created or, if modified, when it was last modified.

**Box 6.** Shows the description of the property acquired by the lender or abandoned by you. If "CCC" is shown, the form indicates the amount of any Commodity Credit Corporation loan outstanding when you forfeited your commodity.

**Future developments.** SFor the latest information about developments related to Form 1099-A and its instructions, such as legislation enacted after they were published, go to www.irs.gov/Form1099A.

**Free File Program.** Go to www.irs.gov/FreeFile to see if you qualify for no-cost online federal tax preparation, e-filing, and direct deposit or payment options.